JOSEPH WISWALL, PLAINTIFF IN ERROR, v. DAVID SAMPSON, LESSEE OF EDWARD HALL AND EDWARD S. DARGAN.

Where real estate is in the custody of a receiver, appointed by a court of chancery, a sale of the property under an execution issued by virtue of a judgment at law, is illegal and void.

The proper modes of proceeding pointed out, to be pursued by any person who claims title to the property, either by mortgage, or judgment, or otherwise.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of Alabama.

Wiswall v. Sampson.

It was an ejectment for the following lot, in the city of Mobile, bounded south by St. Francis street, and lying between Water and Commerce and Planters streets of the said city, having a front of thirty-five feet on St. Francis street, and extending to Planters street, with the same breadth; bounded east by lands formerly belonging to M. D. Eslava, and west by a lot of Beach, Ela & Co.

The declaration contained three counts; two upon a demise from Edward Hall, a citizen of the State of Maryland, and the third a demise from Edward S. Dargan.

Although the decision of the court turned upon a single point, it is necessary to connect it with the other circumstances of the case which are somewhat complicated.

The following table contains a reference to the principal facts bearing upon the respective titles of the plaintiff and defendant.

1840, April 28. Ticknor, being in possession, conveyed the property to Day

| Plaintiff's Title. | Defendant's Title. |
|---|---|
| 1840. | 1840. |
| Dec. 28. Fowler and others obtained a judgment against Ticknor for $4,991.<br>Dec. 31. Crouch and Sneed obtained a judgment against Ticknor for $7,176.25. | |
| 1842. | 1842. |
| | June 14. Wiswall obtained judgment against Ticknor for $2,233.17.<br>July 1. Fi. fa. issued on it, returned "no property found." |
| 1843. | 1843. |
| | Feb. 7. Bill filed by Wiswall to set aside the deed from Ticknor to Day as fraudulent. |
| 1845. | 1845. |
| Feb. 24. Alias fi. fa. on Crouch and Sneed's judgment.<br>April 7. Alias fi. fa. on Fowler's judgment. | |
| | April Term. Deed from Ticknor to Day set aside as fraudulent.<br>June 27. Receiver appointed by the chancellor, took possession. |
| July 7. Lot sold to Dargan under the executions.<br>August 13. Marshal executed a deed to Dargan. | |
| | Nov. 26. Dargan applied to the chancellor to have the property delivered over to him, or for leave to bring an ejectment. Both refused. |
| 1847. | 1847. |
| | March 1. Lot sold by the master in chancery to Wiswall, and deed made. |
| 1848. | 1848. |
| April Dargan brought an ejectment against Wiswall. | |

5*

Upon the trial, the following bill of exceptions was taken:.

Be it remembered, that on the trial of this cause on this 4th day of January, 1849, before the Honorable William Crawford, Judge, the plaintiffs, to show title in their lessors, offered in evidence a judgment rendered in this court on the 28th December, 1840, in favor of C. S. Fowler & Co., against John Ticknor, for $4,991, besides costs; also a judgment rendered in this court, on the 31st December, 1840, in favor of Crouch and Sneed against John Ticknor, $7,176.25 and costs; upon each of which judgments *fi. fas.* were issued within a year and returned by the marshal, No property found; no other executions or process issued upon either of these judgments, except the following: Upon the judgment of Crouch and Sneed an *alias fi. fa.* was issued on the 24th February, 1845, and levied on the property sued for, upon which the marshal returned, Levied — and " the sale of the property levied on postponed by Judge E. S. Dargan, until further order." And on the 17th May, 1845, a *pluries fi. fa.* issued on this judgment and was levied on the same property. Upon the judgment of C. S. Fowler & Co. an *alias fi. fa.* was issued on the 7th of April, 1845, and levied on the same property, and returned, For want of time to sell. And on the first day of May, 1845, a *venditioni exponas* issued, upon which and the execution on the Crouch and Sneed judgments, issued the 17th May, the property was sold by the marshal on the 7th July, 1845, to Edward S. Dargan, for $7,500 and a deed was made by the marshal to said Dargan, bearing date the thirteenth of August, 1845. The plaintiff further offered in evidence a deed of release and quitclaim of the same premises, from Edward S. Dargan to Edward Hall, one of the lessors, bearing date the 3d of April, 1848, a copy of which is hereto attached, marked X; to the reading of which the defendant, by his attorney, objected, on the ground that it was neither acknowledged nor recorded; but the objection was overruled by the court, and the deed admitted in evidence upon the proof of the handwriting of Dargan, and the defendant excepted. The plaintiff further offered evidence to show that John Ticknor was in possession of the property sued for from 1838 or 1839 claiming title, and that he remained in possession until about 1845; but whether, after 1840, Ticknor claimed it as his own, or held possession as the tenant of some one else, witness did not know. It further appeared that Ticknor built the store; that in 1839 or 1840, he became embarrassed, and that he owed a large sum of money to one James L. Day, and from some time in 1840 carried on business in the store as the agent of said Day. Day was often there and had the control, but Ticknor managed all the details. It was further proved that McCoy and Johnson,

2*

the tenants served with the declaration, were in possession of the premises in April, 1848, and had been in possession since November, 1847.

The defendant then offered in evidence a judgment obtained in the Circuit Court of Mobile County, on the 14th day of June, 1842, in favor of Joseph Wiswall against John Ticknor, for the sum of $2,233.17, besides costs; and a *fi. fa.* issued thereon the 1st July, 1842, returnable to the fall term of said court, which was returned by the sheriff, No property found; also the transcripts from the records, duly certified, of a deed made by John Ticknor to James L. Day, bearing date the 28th of April, 1840, a copy of which is annexed, marked A; also the exemplification of a decree and proceedings in a suit in chancery, filed the 7th of February, 1843, by Joseph Wiswall, as a judgment creditor of John Ticknor, against said Ticknor and James L. Day; a copy of which bill, answers, and decrees, are hereto annexed, marked B; also a decree and proceedings in the same court of chancery upon a bill filed March 1st, 1845, by the president, directors, and company of the Bank of Mobile, James Stewart, and Henry Lazarus, several judgment creditors of said Ticknor, and against said Ticknor and James S. Day, which bill was similar in its form and object to the bill of Wiswall, and was served on the defendant, Ticknor, on the 1st March, 1845; a copy of the answer of Day, and the decree, is annexed, marked C. The defendant then proved that Waring, the receiver of the Court of Chancery in the above two suits, went into the possession of the property sued for on St. Francis street, as such receiver, on the 27th day of June, 1845, and remained in possession as such receiver until the same was sold by him on the first Monday of March, 1847; that notice was given at the marshal's sale, when the property was bid off by Dargan, of the pendency of the above-named suits in chancery, and the claims of the complainants there asserted, and that he was, as receiver aforesaid, then in possession of said property under the decrees in chancery in the above suits. The property was duly sold by the receiver on the 1st day of March, 1847, to K. B. Sewall for six thousand five hundred dollars, and a deed of the same made to him by the said receiver and master in chancery; and on the tenth day of May, 1847, the same was conveyed by said Sewall to the defendant, Joseph Wiswall; it was also shown that the purchaser from the receiver went into possession, and that the whole amount of the purchase-money was paid and appropriated under the directions of the Court of Chancery.

The defendant then offered in evidence the transcript of a decree and proceedings had in a court of chancery, in Mobile,

upon the petition of Edward S. Dargan against Moses Waring, receiver, Joseph Wiswall, John Ticknor, and James L. Day, a copy of which is hereto annexed, marked Exhibit D; which decree had been affirmed by the Supreme Court; C. Cuyler, the deputy marshal who made the sale to Dargan, testified that no money whatever was paid upon said sale, but that Dargan gave his note to the marshal for the costs.

John F. Adams testified that he acted as the attorney of C. S. Fowler & Co. in recovering their judgment in this court, and had ever since represented said judgment; and that E. S. Dargan, from some time prior to the marshal's sale, represented the judgment of Crouch and Sneed; that it was agreed between said attorneys, Adams and Dargan, representing said judgments, that the land should be sold upon them, and bid off in the name of Dargan, and that if the title thus acquired should enable Dargan to recover the property, the judgment of C. S. Fowler & Co. should be paid out of it; but that if the property should not be recovered by such title, then the sale was to be considered a nullity, and no money to be paid whatever on account of it; and that this was the understanding of Adams, but that after the sale he yielded to the views of Dargan, and signed a memorandum to the effect that Dargan should be a trustee for the parties. It was further in evidence that with the arrangements between Dargan and Adams there was no connection on the part of Ticknor, the defendant in the judgment, and no assent was given by him to them.

Adams also testified that, as the representative of the judgment of C. S. Fowler & Co., he entered a motion in this court at the spring term, 1847, to amend the marshal's return made upon the execution in that case, to show that no money was in fact paid on said bid of Dargan; and said motion was produced and read to the jury, and is still pending and undetermined

Defendant then offered to read a bill filed in the Chancery Court of Mobile, on the 18th February, 1847, in the name of David A. Hall, assignee in bankruptcy of C. S. Fowler & Co., against John Ticknor, James L. Day, Moses Waring, receiver, Joseph Wiswall, Bank of Mobile, James Stewart, and Henry Lazarus, the object of which bill was to reach and have appropriated to the payment of said judgment of C. S. Fowler & Co. the proceeds of the sale of the property to be made in that court upon the bill of said Wiswall and others; said bill was filed by J. F. Adams, as solicitor of the parties, and sets forth, among other things, the following: " That the said premises were sold on the 1st of July, 1845, by the marshal, to Edward S. Dargan, for the nominal sum of $7,500, and the marshal executed to said Dargan his formal deed for the same, and there-

upon made return upon the process that the premises were sold for the sum above named. And your orator now averreth, that in fact neither the sum of $7,500, nor any other sum, was paid by said Dargan to the plaintiffs in execution, or to any person for them, but his said bid was made upon his stipulation made with the plaintiffs' attorney, and on the distinct understanding and intent on his part, that in case his title under the said sale should prove to be valid and effectual in law, he would pay to the said plaintiffs or your orator so much money upon his said bid as he might thereafter be able to realize by a sale; but if the said title should not prove to be available nor enable him to obtain possession, that in that case he should pay nothing." Said bill is not sworn to, and is still pending in the Court of Chancery: to the introduction of this bill as evidence, the plaintiffs objected on the ground that it was not connected with the plaintiffs in this suit, and as being the statement of counsel merely, and not evidence against C. S. Fowler & Co.; and the objection was sustained, and the said bill excluded; to which the defendant, by his counsel, excepted. This was all the evidence offered in the case, and thereupon the court charged the jury —

That the deed from Ticknor to Day, of April 28th, 1840, was, upon its face, in connection with the answers of Ticknor and Day, fraudulent as to creditors, and void; to which, the defendant excepted.

The court further charged, that the title of Dargan, derived from the marshal's sale, under the judgment of C. S. Fowler & Co. and of Crouch & Sneed, was superior to the title of Wiswall, derived from the sale under the chancery proceedings, and entitled the plaintiffs to recover; to which the defendant, by his counsel, excepted.

The court further charged the jury, that the proceedings and decree in the Court of Chancery, upon the petition of Dargan, was not binding or conclusive upon the parties in this suit; that it was not necessary for Dargan to go into the Court of Chancery for aid, that his remedy was at law, and the proceedings there upon his petition had no effect whatever upon his title, and must be wholly disregarded in this suit; to which the defendant, by his counsel, also excepted, and requested the court to give the following charges to the jury: —

1. That, if the jury believe the deed from the marshal to Dargan was made without any pecuniary consideration, it could pass no title; which the court refused; but charged that, under the evidence before them, it was valid if no money was paid by the purchaser, to which the defendant excepted.

2. That the filing of Wiswall's bill in chancery, and the pro-

ceedings thereon, to a final decree in his favor, gave him a specific lien upon the property of Ticknor, from the commencement of his suit, which could not be divested by any subsequent proceedings upon the older judgments under which the plaintiffs here claim; which was refused, and the defendant excepted.

3. That the receiver of the Court of Chancery, in the suits of Wiswall and others, being in possession of the property under the order of that court at the time of the marshal's sale, and notice thereof being given at that sale, affected the purchaser, and invalidated his title; which was refused; and the court charged that such possession and notice in no manner affected the marshal's sale, or the purchaser under it; and the defendant excepted.

4. That the proceedings in the Court of Chancery, upon the petition of Dargan, the purchaser at the marshal's sale, was conclusive upon the parties and his title thus acquired; which was refused; and the defendant excepted.

5. That, under the statutes and decisions of Alabama, it is not the oldest judgment, but the judgment lien, that has been kept alive by the oldest execution, regularly issued, without the loss of a term, that has the priority as between judgment creditors; which was refused; and the defendant excepted.

6. That, if neither Dargan nor Edward Hall were in possession of the property on the 3d of April, 1848, the deed of that date, from Dargan to Hall, was void and conveyed no title; this was also refused; and the court charged that, under the evidence before the jury, this deed was valid; to all which the defendant excepted.

And the defendant tenders the above as his bill of exceptions in the case, and prays the court to sign and seal the same, which is done accordingly.

WILLIAM CRAWFORD. [SEAL.]

All the exceptions were argued in this court; but it is only necessary to refer to the above charge, viz., that the title of Dargan was superior to that of Wiswall, and that the decree in chancery, on the petition of Dargan, was not conclusive upon the rights of the parties; that he was not bound to go into that court for relief, as his remedy was at law.

It was argued by *Mr. Seward,* for the plaintiff in error, with a brief of *Mr.* Sewall, and by *Mr. Chilton,* for the defendant in error, with a brief of Mr. John A. Campbell.

It was contended, by the counsel for the plaintiff in error, that

Wiswall v. Sam son.

the court erred in refusing to instruct the jury, " that the receiver of the Court of Chancery, in the suits of Wiswall and others, being in possession of the property, under the order of the court, at the time of the marshal's sale, and notice thereof being give i at that sale, affected the purchase by Dargan and invalidated his title, and in charging, on the contrary, that such possession and notice in no manner affected the marshal's sale, or the purchase under it." Because, —

1. The levy, under the judgments of C. S. Fowler & Co. and Crouch & Sneed, invested neither the marshal with any title nor the Federal Court with any jurisdiction over the land, nor could it divest any title, if the defendant Ticknor was in possession, unless followed by an actual sale by the marshal, and payment of the purchase-money by the purchaser. Forrest & Lyon v. Camp, 16 Ala. 647.

And then, not until the sale took place and the money was paid. The sale took place in July; the deed was made in August. 1 Rich. Eq. Rep. 340.

2. But Ticknor was not in possession. The Court of Chancery, by its receiver, was in possession on the 25th June previous; and held, not for Ticknor, but for Wiswall and the other parties claiming against Ticknor. 3 P. Wms. R. 379; 2 Story, Eq. § 833. The Court of Chancery was not holding the property in safe custody, until the right should be determined between Wiswall on the one side, and Ticknor & Day on the other; for it had already determined the right in favor of Wiswall, and ordered a sale, and the proceeds to be applied to his judgment. Ticknor & Day v. Wiswall, 6 Ala. 178. Its jurisdiction was complete, and adverse to all third parties. 10 Paige, 43.

Where different courts have concurrent jurisdiction, that before which proceedings are first had, and whose jurisdiction first attaches, has authority paramount to the others, and cannot be ousted by subsequent proceedings in those courts. The Court of Chancery took jurisdiction to decide upon the right and title to this land, when Wiswall filed his bill on the 7th February, 1843, and it continued its jurisdiction over it until it was sold under its decree. No jurisdiction as to the premises attached to the Federal Court before the sale to Dargan, if then. Hagan v. Lucas, 10 Pet. 400; Smith v. McIver, 9 Wheat. 532; Corning v. White, 2 Paige, 567; The Robert Fulton, 1 Paine, 621; P. & M. Bank v. Walker, 7 Ala. 945; Parker v. Browning, 8 Paige, 389.

The counsel for the defendant in error thus noticed this point: —

We deny that the Court of Chancery could prevent the execution of the levy made by the marshal, by placing a receiver in possession. The Court of Chancery insists upon no such power.

The rule of chancery is stated in 7 Paige, 513. The head-notes are: " When property is rightfully in the hands of a receiver, it is in the custody of the court, and cannot be disstrained upon for rent without permission of the court by whom the receiver was appointed; and any person who takes the property out of the possession of the receiver without such permission, after he has notice of the character in which possession is holden, is guilty of a contempt."

The same principles are applicable to any interference with the possession of a receiver, sequestrator, committee, or custodee, who holds the property as the officer of the Court of Chancery; as his possession is the possession of the court itself. Noe v. Gibson, 7 Paige, 513.

" Where a receiver is in possession of real estate which is subject to the lien of a judgment, the sale of the premises by the sheriff, upon an execution on such judgment, does not disturb the possession of the receiver; and the sheriff cannot, therefore, be proceeded against for a contempt in making such a sale. But the purchaser cannot disturb the possession of the receiver, when he obtains his conveyance from the sheriff, without the permission of the court. 9 Paige, 373.

This subject is discussed at large in a late case before Lord Truro, reported in 3 Gordon & Macnaghten R. 104, from which we extract.

" I am of opinion, that it is not competent for any one to interfere with the possession of a receiver, or to disobey an injunction or any other order of the court, on the ground that such orders were improvidently made. Parties must take a proper course to question their validity; but while they exist they must be obeyed. I consider the rule to be of such importance to the interests and safety of the public, and to the due administration of justice, that it ought on all occasions to be inflexibly maintained. I do not see how the court can expect its officers to do their duty, if they do it under the peril of resistance, and of that resistance being justified on grounds tending to the impeachment of the order under which they are acting. In the present case, it would have been perfectly open to the plaintiffs in the execution to have applied to this court, to be heard *pro interesse suo*, or to have been heard on a summary application for leave to levy under their execution, notwithstanding the posssesion of the receiver. There is no instance in which justice may not be readily obtained by persons who are supposed to have their

rights interfered with by an order or process issued by this court. Thus, I find, in one case, where a party wished to distrain for rent on property in the possession of a receiver, that the court, being satisfied that the legal right of distress was paramount to the title of the party for whose benefit the receiver was appointed, allowed the distress to be made. In another case, where property liable to distress had been sold, and the receiver had received the proceeds and paid them into court, the landlord having claimed a right to distrain while the receiver was in possession, this court ordered the receiver to pay out of those proceeds, to the landlord, the rents that were due to him, the receiver being in possession for the benefit of the tenant for life, who was liable for the payment of that rent which was so sought to be distrained for on the property in the possession of the receiver. I apprehend, then, it may be taken as a rule that, though this court may have issued a process, or have made an order which may interfere with the supposed rights and interests of other parties, not parties to the cause, it is always competent for such parties to make an application to the court for relief; and it is not to be presumed or doubted, but that justice will be duly administered to them on that application."

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the Southern District of Alabama.

The suit in the court below was an action of ejectment against Wiswall to recover the possession of a lot of land situated in the city of Mobile.

The lessors of the plaintiff gave in evidence two judgments against John Ticknor—one in favor of Fowler & Co. for $4,491, rendered 28th December, 1840—the other in favor of Crouch & Sneed for $7,167.25, rendered 31st December of the same year, each of them in the Circuit Court of the United States. Executions were issued upon each of the judgments within the year, and returned by the marshal "no property found."

An *alias fi. fa.* was issued on the judgment in favor of Crouch & Sneed on the 24th February, 1845, and the lot in question levied on; *an alias fi. fa.* was also issued on the judgment in favor of Fowler & Co. on the 7th April, 1845, and a levy made on the same; and on the 7th July the lot was sold on both executions, and bid off by Dargan, one of the lessors of the plaintiff, for the sum of $7,500, and a deed executed to him by the marshal on the 13th August of the same year. Dargan quit-claimed the premises to Hall, the other lessor. The lessors of the plaintiff claim title under this sale.

The defendant, Wiswall, gave in evidence a judgment in his favor against Ticknor in the Circuit Court of the State for $2,233.17, rendered 14th June, 1842; an execution issued 1st July of the same year, which was returned by the sheriff "no property found;" also a deed of the lot in question from Ticknor to one James L. Day, bearing date 28 April, 1840; and the exemplification of a decree and the proceedings in chancery on a bi" filed 7th February, 1843, by Wiswall against Ticknor and Day, setting aside the deed to Day as fraudulent and void against creditors. The decree was rendered April term, 1845. Also the appointment of a receiver by the court, to whom possession of the property was delivered on the 27th June of the same year. The receiver remained in the possession till the lot was sold by the master, 1st March, 1847, under the decree in chancery, and was purchased in for the defendant Wiswall for the sum of $6,500.

The defendant claims under this title.

Notice was given, on the day of sale, by the marshal, under the two judgments, of the pendency of this suit in chancery, and of the appointment of a receiver, and that he was in the possession of the property.

It appeared, also, that the lot was bid off by Dargan at the marshal's sale, by an arrangement between the attorneys representing the two judgments, Dargan being the attorney for the one in favor of Crouch & Sneed, that if the title thus acquired should enable him to recover the property, the judgment in favor of Fowler & Co. should be paid out of it; but, if he should fail to recover it, then the sale was to be considered a nullity, and no money was to be paid.

It further appeared, that an application had been made by the attorney in the judgment in favor of Fowler & Co. to the court to amend the marshal's return so as to set forth the fact that no money had been paid, and that the motion was then pending in court. And further, that a bill had been filed in chancery by the assignee in bankruptcy of the judgment of Fowler & Co. against the defendant and others, to have the proceeds of the sale of the property on the decree applied to the payment of that judgment, and in which bill it is insisted that the sale under the two judgments was inoperative, on account of the agreement between the attorneys under whom it was made, and that this suit was then pending.

It further appeared, that Dargan applied to the Court of Chancery on the 26th November, 1845, by petition, setting out his title under the two judgments to have the possession of the lot by the receiver delivered up to him, or if that should not be ordered, then that he might be at liberty to bring an action of ejectment against the receiver to recover the same.

That the defendant Wiswall put in his answer, setting up the same matters now relied on to invalidate the sale to Dargan, and also claiming a paramount lien upon the property by virtue of his judgment, and bill in chancery and decree setting aside the fraudulent conveyance to Day, directing a sale and application of the proceeds to the payment of his judgment, the appointment of a receiver, &c.

That the chancellor overruled the application, and dismissed the petition on the 10th December, 1845. From which order an appeal was taken to the Supreme Court, and the decree or order affirmed.

After the evidence was closed, the court charged the jury, that the title of Dargan under the marshal's sale upon the two judgments was superior to that of the defendant under the sale upon the decree in chancery, and directed a verdict for the plaintiff. And further, that the decree in chancery on the petition of Dargan was not conclusive upon the rights of the parties — that he was not bound to go into that court for relief, as his remedy was at law.

The case is now before us on exceptions to this charge.

It was made a question, on the argument, whether or not the lien of the judgments, under which the marshal's sale took place, had not been postponed to that of Wiswall, on account of laches in the enforcement of them by execution. But in the view we have taken of the case, the validity of the liens, at the time of sale, will be conceded, without, however, intending to express any opinion upon the question.

Wiswall filed his bill in chancery against Ticknor and Day to set aside the fraudulent conveyance to the latter, and have the property applied to the satisfaction of his judgment, on the 7th February, 1843. In that bill he prayed for a sale of the real estate, and for the appointment of a receiver to take charge of it with other assets of the judgment debtor; and, also, for an injunction. A temporary injunction was granted. On the coming in of the answers of the defendants, the complainant, on the 11th April of the same year, moved for the appointment of a receiver, and the defendants, at the same time, moved to dissolve the injunction. The court denied the motion to appoint the receiver, and dissolved the injunction, expressing the opinion that the answers so far explained the circumstances under which the deed to Day was given, as to remove the charge of fraud against it. An appeal was taken to the Supreme Court, and, on the 10th April, 1844, that court reversed the order of the court below, and remanded the cause for further proceedings: and on the 15th April, 1845, the Chancellor made a decree, that the deed was fraudulent and void, as against the complainant, and re-

ferred the case to a master, to take. and state the account between the parties. He further ordered and decreed that a receiver should be appointed to take possession of all the property embraced in the fraudulent conveyance, and, particularly, that possession should be delivered to him of the premises in question; and further, that the receiver, under the direction of the master, should sell the same and apply the proceeds to the payment of the complainant's judgment, with costs, &c.

The receiver was appointed on the 27th June, 1845, and on the same day Ticknor, who was in possession of the premises, attorned to him, who held possession until the sale was made in pursuance of the decree. It will be recollected that the execution on the judgment in favor of Crouch & Sneed, was issued, and levied on the 24th February, 1845; and on that in favor of Fowler &.Co. 7th April of the same year, and that the sale took place under which the lessors of the plaintiff claim, 7th July, 1845.

At the time, therefore, of this sale, the receiver was in the possession of the premises, under the decree of the Court of Chancery — in other words, the possession and custody of them were in the Court of Chancery itself, (as the court is deemed the landlord,) to abide the final decree to be thereafter rendered in the suit pending.

The appointment of a receiver is a matter resting in the discretion of the court; and, as a general rule, in making the appointment on behalf of a complainant seeking to enforce an equitable claim, or a claim which is the subject of equitable jurisdiction, against real estate, it will take care not to interfere with the rights of a person holding a prior legal interest in the property. Thus, where there is a prior mortgagee having the legal estate, the court will not, by the appointment of a receiver, deprive him of his right to the possession; but, at the same time, it will not permit him to object to the appointment by any act short of a personal assertion of his legal rights, and the taking of possession himself. 1 J. & W. 648; 2 Swanst. 108, 137; 3 Id., 112, n. 115; 3 Daniel's Pr. 1950, 1951.

If the person holding the legal interest is not in possession, the equitable claimant against the property is entitled to the interference of the court, not only for the purpose of preserving it from waste, but for the purpose of obtaining the rents and profits accruing, as a fund in court to abide the result of the litigation. For until the person holding the legal interest takes possession, or asserts his right to the possession, the accruing rents and profits present a question simply between the parties to the litigation. And the court will also appoint a receiver, even against a party having possession under a legal title, if it

is satisfied such party has wrongfully obtained that interest in the property. Thus, where fraud can be proved, and immediate danger is likely to result, if possession, pending the litigation, should not be taken by the court in the mean time. 13 Ves. 105; 16 Id. 59; 3 Daniel's Pr. 1955.

The effect of the appointment is not to oust any party of his right to the possession of the property, but merely to retain it for the benefit of the party who may ultimately appear to be entitled to it; and when the party entitled to the estate has been ascertained, the receiver will be considered his receiver, (T. & R. 345; Daniel's Pr. 1982); and the master will usually be directed to inquire what encumbrances there are affecting the estate, and into the priorities respectively. 10 J. R. 521, Codwise *v.* Gelston.

When a receiver has been appointed, his possession is that of the court, and any attempt to disturb it, without the leave of the court first obtained, will be a contempt on the part of the person making it. This was held in Angel *v.* Smith, 9 Ves. 335, both with respect to receivers and sequestrators. When, therefore, a party is prejudiced by having a receiver put in his way, the course has either been to give him leave to bring an ejectment, or to permit him to be examined *pro interesse suo.* 1 J. & W. 176, Brooks *v.* Greathed; 3 Daniel's Pr. 1984. And the doctrine that a receiver is not to be disturbed, extends even to cases in which he has been appointed expressly, without prejudice to the rights of persons having prior legal or equitable interests. And the individuals having such prior interests must, if they desire to avail themselves of them, apply to the court either for liberty to bring ejectment, or to be examined *pro interesse suo;* and this, though their right to the possession is clear. Cox, 422; 6 Ves. 287.

The proper course to be pursued, says Mr. Daniel, in his valuable treatise on Pleading and Practice in Chancery, by any person who claims title to an estate or other property sequestered, whether by mortgage or judgment, lease or otherwise, or who has a title paramount to the sequestration, is to apply to the court to direct the plaintiff to exhibit interrogatories before one of the masters, in order that the party applying may be examined as to his title to the estate. An examination of this sort is called an examination *pro interesse suo*, and an order for such examination may be obtained by a party interested, as well where the property consists of goods and chattels, or personalty, as where it is real estate.

And the mode of proceeding is the same in the case of the receiver. 6 Ves. 287; 9 Id. 336; 1 J. & W. 178; 3 Daniel's Pr. 1984.

A party, therefore, holding a judgment which is a prior lien upon the property, the same as a mortgagee, if desirous of enforcing it against the estate after it has been taken into the care and custody of the court, to abide the final determination of the litigation, and pending that litigation, must first obtain leave of the court for this purpose. The court will direct a master to inquire into the circumstances, whether it is an existing unsatisfied demand, or as to the priority of the lien, &c., and take care that the fund be applied accordingly.

Chancellor Kent, in delivering the opinion of the court in Codwise. v. Gelston, as Chief Justice, observed, "that if a fund for the payment of debts be created under an order or decree in chancery, and the creditors come in to avail themselves of it, the rule of equity then is, that they shall be paid *in pari passu*, or upon a footing of equality. But when the law give a priority, equity will not destroy it, and especially where legal assets are created by statute, as in case of a judgment lien, they remain so, though the creditors be obliged to go into equity for assistance. The legal priority will be protected and preserved in chancery."

The settled rule, also, appears to be, that where the subject-matter of the suit in equity is real estate, and which is taken into the possession of the court pending the litigation, by the appointment of a receiver, or by sequestration, the title is bound from the filing of the bill; and any purchaser, *pendente lite*, even if for a valuable consideration, comes in at his peril. 3 Swanst. 278, n., 298, n.; 2 Daniel's Pr. 1267; 6 Ves. 287; 9 Id. 336; 1 J. & W. 178; 3 Daniel's Pr. 1984.

It has been argued, that a sale of the premises on execution and purchase, occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale therefore, in such a case, should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of the judgment creditor, who has filed his bill to remove impediments in the way of his execution. If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made. And, in order to effect this, the court must administer it independently of any rights acquired by third persons, pending the litigation. Otherwise, the whole fund may have passed out of its hands before the final decree, and the litigation become fruitless.

It is true, in administering the fund, the court will take care that the rights of prior liens or encumbrances shall not be de-

stroyed; and will adopt the proper measures, by reference to the master or otherwise, to ascertain them, and bring them before it. Unless the court be permitted to retain the possession of the fund, thus to administer it, how can it ascertain the interest in the same to which the prosecuting judgment creditor is entitled, and apply it upon his demand?

There can be no difficulty in ascertaining the prior liens and encumbrances, as all of them are matters of record. Several of the judgment creditors came in, in this case, and received their share in the distribution.

These two judgment creditors had notice of the suit before the sale, and might have made themselves parties to it, and claimed application of the fund according to the priority of their liens.

They were also before the court, pending the litigation, on the petition of Dargan, who had purchased for their benefit, to have the possession of the receiver delivered up to the purchaser. There is no pretence, therefore, for saying that they have not had notice of the proceedings in the equity suit. The prayer of the petition was denied, among other grounds, because their appropriate remedy was a motion to the court, founded on their judgments to have the proceeds of the sale under the decree applied to them according to priority.

We agree, that the person holding the prior legal lien or encumbrance, must have notice, and an opportunity to come in and claim his prior right to the property or interest in the fund before his legal right can be affected; and the proper way is by summons or notice upon the order or direction of the court.

This notice can be readily given on the report of the master, of the prior liens or encumbrances resting upon the estate.

But it is not necessary to go this length in the case before us, as it is sufficient to say, that the sale under the judgment, pending the equity suit, and while the court was in possession of the estate without the leave of the court, was illegal and void. We do not doubt but that it would be competent for the court, in case the judgment creditor holding the prior lien had not come in and claimed his interest in the equity suit, to decree a sale in the final disposition of the fund subject to his judgment. The purchaser would then be bound to pay it off. But this disposition of the legal prior encumbrance is a very different matter, and comes to a very different result, from that of permitting the enforcement of it, *pendente lite,* without the leave of the court. The rights of the several claimants to the estate or fund is then settled, and the purchase under the decree can be made with a full knowledge of the condition of the title, or charges to which it may be subject.

Neither do we doubt but that it is competent, and might, in some cases, be fit and proper for the court, where the property in dispute is ample, and the litigation protracted, to permit the execution to issue, and compel the prosecuting creditor to pay off the judgment. 3 Beav. 428. But it is manifest that these proceedings, on behalf of the prior encumbrancer, should be under the control of the discretion of the court, as the condition of the title to the property may frequently be so complicated and embarrassed, that unless the sale was withheld until the title was cleared up by the judgment of the court, great sacrifice must necessarily ensue to the parties interested.

This case affords an apt illustration of the remark. The marshal's sale was made under an arrangement that no money was to be paid by the purchaser, unless he succeeded in obtaining a title to the property under it. It is obvious, therefore, if the purchase had been unconditional, and at the risk of the purchaser, it must have been bid off for a nominal consideration.

As we have already said, it is sufficient, for the disposition of this case, to hold, that while the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can take place either on execution or otherwise, without the leave of the court for that purpose. And upon this ground, we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser.

We are, also, inclined to think, that the question of title to the property under the marshal's sale is concluded between these parties by the judgment of the court in the proceedings on the petition by the purchaser for the removal of the receiver, and to be let into the possession. This, we have seen, is the appropriate remedy on behalf of a person claiming a paramount legal right to an estate which has been brought into the possession and safe keeping of the Court of Chancery, pending the litigation in respect to it.

This proceeding was explained by Lord Eldon in Angel *v.* Smith, (9 Ves. 335), speaking of the rule in respect to sequestrators, and which he held was equally applicable in the case of receivers. "Where sequestrators," he observed, "are in possession under the process of the court, their possession is not to be disturbed, even by an adverse title, without leave: upon this principle, that the possession of the sequestrators is the possession of the court, and the court being competent to examine the title, will not permit itself to be made a suitor in a court of law, but will itself examine the title. And the mode is, by permitting the party to come in to be examined *pro interesse suo;* the practice being, to go before the master to state his title, and there is the judgment of the master, and afterwards, if neces-

sary, of the court upon it. See also 10 Beav. 318; 2 Daniel's Pr. 1271; 2 Mad. 21; 1 P. Wms. 308.

An appeal to the House of Lords will lie from the order or decree of the Chancellor upon exceptions to the master's report in the matter. 2 Daniel's Pr. 1273; 3 Id. 1633, 1634.

In the petition to the Chancellor in the case before us, the purchaser set out his title at large under the marshal's sale, and claimed the possession of the property by virtue of his title, that the receiver might be removed, and the possession delivered to the petitioners.

The answer of Wiswall set up his right to the property under the decree in the suit against Ticknor and Day.

The right of the petitioner, therefore, under his title to the possession of the property as against the right of Wiswall under the proceedings in equity and the decree in his favor, would seem to be a question directly involved. The court so understood the issue and passed upon it, holding, as we hold in this case, that the sale was illegal and void, having been made while the estate was in the possession and safe keeping of the Court of Chancery. From this decision an appeal was taken to the Supreme Court, where the order or decree of the court below was affirmed. 11 Ala. R. 938; Dargan *v.* Waring and others.

The question is one depending very much upon the local law of Alabama, and the judgment, therefore, in the matter, by the highest court of the State, is entitled to the highest respect.

For these reasons we are of opinion that the judgment of the court below was erroneous and must be reversed, and the case remitted for further proceedings.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court for further proceedings to be had therein, in conformity to the opinion of this court.