## *EX PARTE* SPRAGINS, BUCK & CO.

### *IN RE* MANN v. POOLE.

1. ASSIGNMENT FOR CREDITORS—COMPENSATION OF ASSIGNEE.—The assignee under a deed of assignment for creditors, and recognized as such pending proceedings to vacate the deed which was subsequently set aside, is entitled to compensation out of the assigned estate for services rendered as assignee until the time that the deed was set aside.

2. IBID.—IBID.—An assignee under a deed of assignment for the benefit of creditors is entitled to no other or greater compensation than the commissions allowed to him by statute for receiving and paying out money; nor can he be allowed commissions on the fund turned over by him to the receiver appointed by the court.

3. CONSENT DECREE—FINDINGS OF FACT.—Where a consent decree, unappealed from, allows fees to plaintiff's attorneys out of the fund in court, their right to be so paid cannot be afterwards questioned; and the amount

of such fees having been fixed by the Circuit Judge, with testimony to sustain his finding, this court will not disturb the finding.

4. JUDGMENTS—DEED VACATED.—Judgments obtained against a debtor after he had made a deed of assignment to his creditors, and before action instituted to vacate such deed, have a lien as of their date on the real estate of their debtor, his deed of assignment having been set aside by decree of court.

5. IBID.—IBID.—CREDITOR'S ACTION.—Where an action is instituted by a creditor in behalf of himself and other creditors to vacate a deed of assignment and administer the estate, but other creditors are not enjoined nor required to come in and prove their demands, such of the creditors as did not make themselves parties, but obtained judgment against the debtor after action brought and before the call for creditors, are entitled to claim a lien for their judgments from their date, the deed of assignment having been vacated.

6. CREDITORS' ACTION.—An order of the court preserving the *status quo* of the assigned estate in the hands of the assignee, is not an appropriation of the assigned estate, nor a recognition of the deed as valid.

7. IBID.—LIEN.—Simple contract creditors acquire no lien on the assets of an assigned estate by instituting action to vacate the deed of assignment.

Before WATTS, J., Laurens, July, 1894.

Appeal by Spragins, Buck & Co., and other creditors, in the case of J. & H. Mann & Co., against J. T. Poole and others. The Circuit decree was as follows:

This cause came on for a hearing before me at the July term of court for the purpose of deciding certain issues herein, to wit: What compensation should be allowed N. B. Dial, Esq., for his services as assignee of J. T. Poole and agent for creditors under deed of assignment. 2d. What fees, if any, shall be allowed plaintiff's attorneys, and out of what fund paid? 3d. As to the homestead of J. T. Poole. 4th. As to the order of priority of payment of creditors of J. T. Poole.

On the 18th day of May, 1892, J. T. Poole executed a deed of assignment to N. B. Dial, Esq., for the benefit of his creditors, and at a meeting of his creditors called by said assignee a majority of creditors accepted under said assignment, and elected N. B. Dial agent. Said agent and assignee proceeded to sell the assigned estate, collect assets belonging to estate, pay off the claims due, and do all things as required by law and to carry

out the terms of the assignment. On June 21, 1892, an action was commenced by these plaintiffs, on behalf of themselves and other creditors of J. T. Poole who would come in under these proceedings and contribute to the expenses of this suit, to set aside the deed of assignment on the grounds set forth in the complaint herein. · On July 23, 1892, his honor, James Aldrich, granted an order restraining the assignee from paying·out any funds in his hands belonging to the assigned estate except necessary expenses to be incurred in the collection of the assets, the payment of taxes, &c. On November 22, 1892, his honor, James F. Izlar, passed a consent order allowing the assignee to pay out the funds in his hands from proceeds of real estate, $2,700, to Shattuck & Hoffman in satisfaction of a mortgage held by them over said real estate.

The cause was heard on its merits by Judge Norton at the February term of the court, 1893, who rendered his decree therein on May 2, 1893, setting aside the deed of assignment on grounds set forth therein, and appointing H. W. Anderson, Esq., receiver of all the real and personal estate mentioned in said paper, upon his entering into bond, &c.; and when so appointed, Mr. Dial, the assignee, was ordered to turn over all funds in his hands to said receiver, leaving the question of compensation of Mr. Dial open until the further order of the court. Defendants appealed from the decree of Judge Norton to the Supreme Court of this State, and his decree was affirmed. H. W. Anderson, Esq., gave his bond as receiver on the day of January, 1894. Subsequently Hon. D. A. Townsend, as judge of 7th judicial circuit, passed a consent decree, allowing among other things a fee of $500 to F. P. McGowan, Esq., for having drawn the deed of assignment, which had been set aside, and $250 to Messrs. W. H. Martin and F. P. McGowan, as a fee for representing the defendants in this cause, and that the fees of plaintiff's attorneys and compensation of N. B. Dial is to be paid out of the funds in hands of receiver received from sale of stock of goods.

J. T. Poole claimed a homestead in his real and personal estate, and $218.25 in personal property was set off to him, to which exceptions have been duly filed. He lived at his home

place in the city of Laurens until it was sold under judgment of foreclosure on June 4th, 1894. He now claims he is entitled to $1,000 out of the funds to come in from the sale of the Martin house, and interest from June 4, 1894, the time he was deprived of a home in his real estate, and $281.75 balance of $500 due in personal property, the last to be paid from sale of stock of goods in hands of receiver.

Mr. Dial as assignee sold all of the real estate in Laurens County except one small tract of land, and sold some in Spartanburg County, but there is some still unsold there, and after the assignment certain creditors obtained judgment against J. T. Poole and transcripted them to that county, and now claim they have the first lien on said lands, and are entitled to the proceeds of sale to pay their claims when it comes into court. It is conceded that the two judgments represented by W. H. Martin, Esq., one in favor of Strawbridge & Clothier, obtained February 26, 1892, and interest March 3, 1892, for $860.35 and $21.15 cost, and the other in favor of Gans Bros. of same date, for $196.15 and $21.15 cost, interest in both from date of recovery should be paid out funds derived from sale of Martin house and small tract of land unsold in Laurens County.

The testimony in this case satisfies me that N. B. Dial, Esq., as assignee and agent, rendered very valuable services to the creditors of J. T. Poole by his careful, skillful, and painstaking management of the same. He made good collections and good sales, and realized more by far for the creditors than in general is the case in such matters. Being an attorney and also a good business man, he knew what to do, and acted with promptness and good judgment in all matters from the time he was appointed until he turned the estate over to the receiver, and the creditors got the benefit of his services, and the court has very properly allowed him to establish what that compensation should be, and after a careful consideration of all the testimony in this case, I am of opinion that he should be allowed $1,104.25. The amount he collected, paid out, and turned over, exclusive of the sale of Martin house, was $12,970; he sold that house for $2,500, and took such ample security as virtually made it a cash transaction; and while the amount allowed him does not under the testimony

compensate him fully for the services rendered by him for the benefit of the assigned estate, yet it is nearly what he would have received had the deed of assignment not been set aside.

The plaintiff's attorneys herein rendered valuable services to the creditors of J. T. Poole, by successfully setting aside the deed of assignment, and preventing the mortgages executed by Dr. Poole to his children and grand-children from being first paid, thereby increasing the amount of funds to be distributed among all the creditors. Such cases are always unpleasant to conduct, and in view of this and considering all the testimony in this case offered by them, I am decidedly of the opinion that $2,600 would be a reasonable fee, and that amount should be paid them.

It has been urged with great ability and force, that when the court appointed a receiver and took charge of the assets of the assigned estate, it levied an equitable lien for the benefit of all the creditors of J. T. Poole, and that lien commenced when complaint was filed. I am free to confess that this question has given me a great deal of trouble. Our own decisions of *Curlee* v. *Rembert*, 37 S. C., 214, and *Younger* v. *Massey*, 41 S. C., 50, apply to liens which were obtained and were outstanding when complaints were filed, and under the decisions of U. S. Courts, in *Wiswall* v. *Sampson*, 14 How., 52, and in *Clinkscales* v. *Manufac. Co.*, 9 S. C., page 323, and *Stackhouse* v. *Wheeler*, 17 S. C., page 91, quoted with approval by our own court in other matters, I am constrained to take this view of the case, and hold that plaintiffs are entitled to be paid out of funds brought in by their diligence, and balance *pro rata* among all the creditors of J. T. Poole—that is, after paying outstanding liens existing at date complaint was filed.

It is, therefore, ordered, decreed, and adjudged, that H. W. Anderson, Esq., receiver herein, pay over to Jno. T. Poole the sum of $1,000, with interest thereon at seven per cent. per annum, from June 4, 1894, out of the proceeds in his hands or to come into his hands from the sale of the J. F. Martin house to Jno. H. Powers, and out of the funds in his hands turned over to him by N. B. Dial, Esq., from sale of stock of goods, he pay to Jno. T. Poole the sum of $281.75. These amounts are for

his homestead. 2. That H. W. Anderson retain out of the funds now in his hands five per cent., to pay him such compensation as the court may hereafter allow him for services as receiver. 3. That out of amounts in his hands or to come in his hands from the mortgage due by Powers for Martin house, after paying amount due Poole as heretofore provided for, he pay to W. H. Martin, Esq., the judgments of Strawbridge & Clothier and Gans Bros. *v.* J. T. Poole. 4. That out of the funds in his hands from sale of stock of goods, he pay the amounts allowed for compensation herein to N. B. Dial, Esq., and fees of plaintiff's attorneys.

It is further ordered, decreed, and adjudged, that H. W. Anderson, Esq., receiver, sell all the unsold lands of J. T. Poole on salesday in November next, or some convenient salesday thereafter, he first legally advertising the same, for one-half cash, remainder on a credit of twelve months, with interest from day of sale, to be secured by bond of purchaser and mortgage of the premises, purchaser to pay for papers, with leave of the purchaser to pay his entire bid in cash, and out of the proceeds derived from such sale he retain five per cent. to pay himself such fees as court may hereafter allow, and balance he pay out to judgment creditors according to priority of lien as herein heretofore provided for—that is to say, plaintiff's judgments in this cause; that balance of funds in his hands, if any, as turned over by N. B. Dial, Esq., after paying amounts herein provided for, and balance of funds in his hands or to come into his hands from sale of real estate he prorate among all the creditors of J. T. Poole who have established their claims herein.

*Messrs. Ball, Simkins & Ball, Johnson & Richey, Simpson & Barksdale, Ferguson & Featherstone, W. H. Martin,* and *F. P. McGowan,* for appellants.

*Mr. N. B. Dial,* contra.

April 15, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The action in the case of Mann *v.* Poole was commenced on the 21st of June, 1892, by the plaintiffs on behalf of themselves and of all others, credit-

ors of the defendant, J. T. Poole, who should thereafter come
in and seek relief under said action, and contribute to the ex-
penses thereof, for the purpose of having a deed of assignment
made by said Poole to N. B. Dial, Esq., together with certain
mortgages previously made by said Poole to his wife and to his
grand-children, set aside as null and void under the assignment
law.   The facts of that case will be found fully stated in the
case as reported in 40 S. C., 1, and, therefore, need not be re-
peated here, except that said deed of assignment was executed
on the 18th of May, 1892, and the mortgages about ninety days
before that date.   While this action was pending, and before
it came to a hearing on the merits, to wit: on the 23d of July,
1892, an order was granted by his honor, Judge Aldrich, en-
joining and restraining the said assignee Dial "from paying
out any of the funds realized, or which may be realized, from
the assigned estate of the said J. T. Poole to any claims against
said estate, except the necessary expenses which may be in-
curred in the collection of said assets, the payment of taxes,
&c., until the further order of the court."   On the 23d Novem-
ber, 1892, the foregoing order was modified by an order of his
honor, Judge Izlar, consented to by all the parties, so as to
authorize Mr. Dial, as assignee as aforesaid, "to pay from the
proceeds of the real estate covered by the mortgage of Shattuck
& Hoffman, the same being the property of the assigned estate
of the said J. T. Poole, the sum of $2,700 to the said Shattuck
& Hoffman, in satisfaction of the mortgage held by them on
said land."

The case came on for hearing on its merits before his honor,
Judge Norton, who, on the 3d of May, 1893, filed a decree, the
nature and scope of which may be seen by reference to the case
of *Mann* v. *Poole*, reported in 40 S. C., 1.   Sufficient to say here,
that, amongst other things, the deed of assignment was set
aside, and Mr. Dial, named therein as assignee, was ordered to
turn over to the receiver, then appointed, all the property em-
braced in said so-called deed of assignment, and if any of it had
been sold, to pay over the proceeds of such sale to the receiver,
reserving the question whether Mr. Dial should be entitled to
any compensation, and if so, how much, for his services while

acting as assignee, until the further order of the court. It seems that though the receiver was appointed by this decree, filed, as above stated, on the 3d of May, 1893, he did not qualify until the 4th of January, 1894, and the assets were turned over to him on the 15th day of that month. This delay was probably owing to the fact that an appeal was taken from the decree of Judge Norton, which was not finally disposed of until the 6th of December, 1893.

After the appeal was finally disposed of, an order was granted by his honor, Judge Townsend, consented to in writing by all parties, the date of which is not appended to said order, but it is stated in the "Case" that it was passed on the 12th of February, 1894, directing "that the defendant, N. B. Dial, heretofore acting in the supposed capacity of assignee of the defendant, J. T. Poole, under a purported deed of assignment, executed by the said Poole to the said N. B. Dial on May 18th, 1892, do, and he is hereby directed to, turn over to H. W. Anderson, as receiver, appointed in the above stated action, all the funds received by the said N. B. Dial from the sale and collections made by him under said supposed deed, excepting such payments and disbursements as were made by the said N. B. Dial while acting in his supposed capacity as said assignee, including the fee of $500 allowed and paid to F. P. McGowan, and the sum of $1,800 paid to Shattuck & Hoffman." The order further directed that the receiver "do, out of the funds arising from the sale of the stock of goods," pay certain sums of money, amongst which are "the fees of the plaintiff's attorneys for services rendered in behalf of creditors, the said fees to be hereafter determined, and to N. B. Dial, Esq., such compensation, if any, as may be allowed him, to be hereafter determined."

It further appears that certain of the creditors of J. T. Poole recovered judgments against him before the 21st of June, 1892, when the action of Mann *v.* Poole was commenced; certain others of the creditors of said Poole, amongst whom are the parties named as appellants in the title of this case, recovered their judgments after the commencement of said action, but before the decree of Judge Norton appointing a receiver; while the plaintiffs, Mann & Co., recovered their judgment by the

same decree by which the receiver was appointed. Under the decree of Judge Norton, all of the creditors of J. T. Poole were required to prove their demands before the clerk of the court by a day certain, or be "barred of all benefit to be derived from the further decree of the court, to be rendered herein in reference to the assigned estate of said debtor." Under this order, the several judgment creditors, as well as sundry simple contract creditors, came in and established their claims; and one of the main questions in this appeal is as to the order in which such claims should be paid.

The clerk made his report on the claims presented, together with the testimony, and upon such report the case was heard by his honor, Judge Watts, who rendered his decree, a copy of which should be incorporated in the report of this case, and from this decree several of the parties have appealed upon the several grounds set out in the record, which need not be stated here, as several of them are but repetitions of others; and we, therefore, propose to consider the several questions which we understand to be presented by these grounds rather than to take up the grounds *seriatim*. These questions are: 1st. What compensation, if any, should be allowed N. B. Dial, Esq., for his services while acting as assignee under the deed of assignment which has been set aside? 2d. What fees, if any, shall be allowed plaintiff's attorneys, and out of what fund paid? 3d. In what order are the creditors who have established their demands against Poole entitled to be paid?

As to the first question, there can be no doubt that the deed of assignment, as between the immediate parties to it, was good and valid, and under the provisions of that deed, and the law relating thereto, the assignee assumed certain duties which he was bound to perform promptly; and what is more to the point, there is as little doubt that Mr. Dial was recognized and treated as assignee by the court in this very case up to the time the receiver was appointed, and hence we do not think it admits of question, that he is entitled to compensation as assignee. The fact that the deed of assignment was afterwards set aside for fraud, in which it is not even intimated that Mr. Dial participated, and for which he was in no wise respon-

sible, cannot affect the question. As we have said, the deed as between himself and the assignor was good, and under it he assumed the performance of certain duties, which the evidence shows he did perform, not only promptly, but intelligently, and in such a manner as enured to the benefit of the creditors; and the only effect of the decree setting aside the assignment, *so far as he was concerned*, was to sever his connection with the assigned estate from that time forward.

The next inquiry is, what is the amount of compensation to which Mr. Dial is entitled? Regarding him as, at least, a *de facto* assignee, that question is answered by the express terms of the statute (section 2145 of Revised Statutes), and we are unable to see by what authority a court can go beyond this express statutory provision. It will be observed that there is no provision in the assignment law which provides for any extra compensation to an assignee for any extraordinary trouble in the management of the assigned estate, as there is in case of executors and administrators, under section 2070 of the Revised Statutes. It seems to us, therefore, that there was error in allowing the assignee anything more than the amount fixed by statute, to wit: five per cent. on all money actually collected by him from the assets, and two and one-half per cent. on all money paid out by him, not including, however, the amount turned over to the receiver under the order of the court, for to include that would be to subject that fund to double commissions. See *Floyd* v. *Priester*, 8 Rich. Eq., 248, which, though not actually in point, is somewhat analogous.

As to the second question—whether any fees shall be allowed the plaintiff's attorneys—it seems to us that that branch of the question is concluded by the order of Judge Townsend, which was not only not excepted to nor appealed from, but also actually consented to in writing, and has, therefore, become the law of this case. This differs from the case of *Tillinghast* v. *Boston Company*, 39 S. C., 484, cited by one of the counsel; for there the question was whether a client would be bound by a private agreement made outside of the court, whereby his attorney undertook to obligate his client to pay the fees of an attorney for the other parties, while here the

question is as to the effect of *an order of the court* made upon the written consent of the attorneys representing the several parties before the court. The other branch of this question— the *amount* of the fees to be allowed the plaintiff's attorneys— is more embarrassing. We must confess that the amount as fixed by the Circuit decree does seem to be quite large—perhaps too large. But this is a question of fact, and under the well settled rule, we do not see how we can disturb the finding of the Circuit Court, for there certainly was some testimony to sustain it, and; indeed, we are bound to say that the weight of the testimony seems to be in favor of the view taken by the Circuit Judge. As to the fund out of which such fees are to be paid, no real controversy seems to be made. At all events, we concur with the Circuit Judge as to this point.

The third question is as to the order in which the judgment creditors are entitled to be paid out of the assets of the assigned estate in the hands of the receiver. These judgment creditors may be divided into three classes: 1st. Those who obtained their judgments prior to the commencement of the action of Mann *v.* Poole. 2d. Those who obtained their judgments after the commencement of that action, but before the decree appointing a receiver to take charge of the assets of the estate of Poole, and administer the same under the order and direction of the court. 3d. The plaintiff's judgment obtained at the same time as the decree appointing the receiver was made, and in the same case.

As to the first class, we understand it to be conceded that these creditors are entitled to be first paid out of such assets as their judgments had a lien upon—that is, the real estate; but whether conceded or not, these judgments unquestionably are entitled to such preference, for it is well settled, that when a deed is set aside, it is, *as to creditors,* as if it never had existed (*Gracey* v. *Davis,* 3 Strob. Eq., 55, *Claflin* v. *Iseman,* 23 S. C., 416, and *Younger* v. *Massey,* 41 *Id.,* 50); for when these judgments were obtained, they at once became a legal lien upon all of the real property of the judgment debtor, except the homestead, situate in the county where the judgments were entered, or in a county where transcripts thereof

were filed, from the time of such filing, notwithstanding the
fact that the judgment debtor had made what proved to be an
abortive attempt to convey away his real estate previous to the
recovery of such judgments.

The next inquiry is as to the *status* of the judgments in the
second class. It will be observed, that the action of Mann *v.*
Poole, while purporting to be a creditors' bill, lacked
one of the features of such a bill; for, while the plain-
tiffs say in the complaint that the action is brought "on
behalf of themselves and of all others, the creditors of the de-
fendant, J. T. Poole, who shall in due time come in and seek
relief by, and contribute to the expense of this action," yet
no injunction was ever asked for or obtained, restraining the
other creditors from seeing or prosecuting their actions already
commenced; and they further say that it is desirable to have a
receiver appointed to take charge of the assets, and to make,
under the orders of the court, an equitable distribution of the
proceeds of such assets—*not* amongst all creditors, but amongst
those "who shall, in due time, come in and seek relief by this
action, and contribute to the expense thereof;" and, so far as
appears by the record before us, none of the other creditors
ever did so come in, and were only brought in by the order of
Judge Norton, *requiring* them to prove their demands before
the clerk, which order or decree was not made until *after* the
creditors belonging to this class had otained their judgments.
It is obvious, therefore, that these creditors were offered the
option, either to come in on the terms proposed or to stay out
and pursue their legal rights in the ordinary way, from which
there was nothing to forbid them; and having adopted the latter
alternative, it is difficult to conceive of any good reason why
they should be deprived of any advantage which they may
have legally obtained.

In the case of *Gracey* v. *Davis, supra,* which was stated to be
a creditors' bill, although the pleadings are not set out in the
report of the case, and recognized as such by the provision for
the payment of the fees of the solicitor "who brought the gen-
eral bill on behalf of the creditors," the rule was laid down by
Dunkin, Ch., in delivering the opinion of the court, in the fol-

lowing language: "The effect of setting aside the deeds is to leave the creditors to enforce their claims, and obtain satisfaction according to their legal priorities; or if the court takes charge of the fund, to direct them to be paid according to their legal rank." The same principle was recognized in *Claflin* v. *Iseman, supra*, and *Curlee* v. *Rembert*, 37 S. C., 214, though the two cases last cited are not cited as exactly in point in the present case. The case of *Wiswall* v. *Sampson*, 14 How., 52, which seems to be relied upon by the Circuit Judge, is not in point, for the only point *decided* in that case, so far as the question we are considering is concerned, was that a judgment creditor having a lien upon the land of an insolvent debtor, which is in the possession of a receiver, appointed by the Court of Chancery, under a bill by a creditor against the debtor and a third person, to set aside a conveyance to the latter for fraud, cannot levy his execution upon such land, if he have notice of the fact that the property is in the custody of the law, but his remedy is to apply to the Court of Chancery, which will take care to protect his interest in making a sale or in distributing the proceeds. This is exactly in accordance with the principle laid down in *Gracey* v. *Davis, supra*, to wit: that if the court takes charge of the fund, it will direct that it be paid out to the creditors according to their legal priorities. So that if the judgment creditors standing in the second class had undertaken to levy their executions upon the land of Poole, after the court had taken charge of his assets and placed them in the hands of a receiver, then the case of *Wiswall* v. *Sampson* would have been precisely in point. But these creditors have not undertaken to do anything of the kind. On the contrary, they are pursuing the same course indicated as the proper course in the case of *Wiswall* v. *Sampson*—that is, asking the court to respect and provide for their legal priorities.

It is true that Mr. Justice Nelson, in delivering the opinion of the court in *Wiswall* v. *Sampson*, does say: "That where the subject-matter of the suit in equity is real estate, and which is taken into the possession of the court pending the litigation by the appointment of a receiver, or by sequestration, the title is bound from the filing of the bill, and any purchaser *pendente lite*,

even if for a valuable consideration, comes in at his peril."
But, in the first place, this remark is manifestly a mere *dictum*,
as no such question was presented in that case.   And, in the
second place, the distinguished justice, immediately preceding
the remarks just quoted, makes a quotation from Chancellor
.Kent, who, in delivering the opinion of the court as Chief Jus-
tice in *Codwise* v. *Gelston*, 10 Johns., 522, uses this language:
"That if a fund for the payment of debts be created under an
order or decree in chancery, and the creditors come in to avail
themselves of it, the rule of equity then is, that they shall be
paid *in paripassu*, or upon a footing of equality.  But when the
law gives a priority, equity will not destroy it, and especially
where the legal assets are created by statute, as in case of a
judgment lien, they remain so, though the creditors be obliged
to go into equity for assistance.   The legal priority will be
protected and preserved in chancery."   It will be observed
that the *dictum* of Mr. Justice Nelson, above quoted, applies
only to a case where property, which is the subject-matter of a
suit, is *purchased pendente lite*, and nothing is said as to the effect
of liens legally obtained upon such property after the com-
mencement of the suit, but before the court has taken posses-
sion of the same and placed it in the hands of a receiver, and
the remarks quoted from Chancellor Kent seem to indicate that
such liens would be respected.

The case of *Meinhard* v. *Youngblood*, 41 S. C., 312, has also
been cited by counsel in the argument here in support of the
view taken by the Circuit Judge.  But an examination of that
case will show that it differs widely from the present case.  In
that case, certain of the creditors of Youngblood commenced
action on their claims, and at the same time sued out warrants
of attachment, which were levied upon the property of Young-
blood.    Thereupon the plaintiffs, Meinhard Bros. & Co., com-
menced this action against Youngblood and the attaching
creditors to set aside the attachments upon the ground of fraud,
and soon thereafter obtained an order from his honor, Judge
Wallace, enjoining and restraining the attaching creditors from
prosecuting their suits and attachment proceedings.   The de-
fendants subsequently moved before Judge Wallace to vacate

rder of injunction, which motion was refused. Subse-
tly, the case came before his honor, Judge Witherspoon,
hearing upon the merits, when the defendants interposed
al demurrer, upon the ground that the complaint did not
facts sufficient to constitute a cause of action. The de-
er was sustained and the complaint dismissed, and from
rder to that effect the plaintiffs appealed, and the order
dge Witherspoon sustaining the demurrer and dismissing
omplaint was reversed, and the case sent back for a hear-
pon the merits, which resulted in a judgment in favor of
laintiffs. While this appeal was pending, but before it
determined, the attaching creditors proceeded with their
ns and recovered judgments therein, and when by final
e the creditors were called to establish their demands, the
hing creditors set up their claims as judgments, and the
tion was whether they were entitled to priority as such.
court held that they were not entitled to any such priority,
tically, for the reason that the injunction originally granted
udge Wallace had never been legally dissolved, for though
e Witherspoon did grant an order sustaining the demur-
nd dismissing the complaint, the practical effect of which
d have been to dissolve the injunction, if such order had
sustained; yet as it was found on appeal to be erroneous
was set aside, it was the same as if no such order had ever
passed, and hence these judgments recovered in violation
ne order of injunction were illegally obtained, and could
e allowed any force or effect as judgments. But in the
ent case there never was any order of injunction restraining,
reditors standing in the second class from commencing or
ecuting their actions, and nothing whatever to prevent
e creditors from pursuing their legal rights in the usual
and hence nothing to prevent them from obtaining the
ments which they now set up. The difference between the
cases is, therefore, very obvious and fundamental.
is insisted, however, that by the order of Judge Aldrich,
ut above, which was passed before the creditors standing
in the second class obtained their judgments, the court,
in effect, though not in form, took charge of the assets

belonging to the assigned estate of Poole, and that no judgment obtained after that time could have any legal lien upon such assets. We do not see how the order of Judge Aldrich can be properly so construed. It certainly does not purport to take charge of the assets, and there is nothing in the language used which implies any such intention. On the contrary, the express object of the order was simply to restrain N. B. Dial from paying out any of the funds which had or might come into his hands under the alleged deed of assignment, except as therein excepted. Pending the attack upon the validity of such deed, its manifest and sole object was simply to preserve matters *in statu quo*, while the court was investigating the validity of the deed of assignment. And the idea that the order of Judge Aldrich should be regarded as a recognition of the validity of the assignment, and hence that these judgments, having been obtained after the date of such deed, could have no lien upon the land therein conveyed, seems to us, if anything, still more far-fetched. Such a motion is utterly inconsistent with the declared purpose of the order, for if Judge Aldrich considered the deed valid, what possible reason can be suggested why he should restrain the assignee from performing the duties imposed upon him by the deed. Besides, we would be very slow to believe that any judge would undertake to pass upon the validity of a deed assailed by the pleadings without hearing the case upon its merits.

We are, therefore, of opinion that the judgment creditors standing in the second class above stated, are entitled to priority in the distribution of the proceeds of the sales of such property as their judgments were a lien upon, after the liens of the judgment creditors standing in the first class are satisfied, in the order of the dates of the respective judgments held by the creditors standing in the second class; and we think that the Circuit Judge erred in holding otherwise.

It only remains to consider the third question—whether the plaintiffs acquired any priority by instituting this action. It is difficult to conceive of any just ground upon which they can claim any priority. Their costs and counsel fees have been provided for, and why should they be any

better provided for than any other creditor? But this question has been so conclusively determined by at least two authoritative cases, that we need not pursue the subject further. In *Day* v. *Washburn*, 24 How., 352, it was held, that where a simple contract creditor (and such is the rank of the plaintiffs in this case) files a bill against his debtor and his assignee, to set aside the assignment for fraud, the party filing the bill acquires no priority over other creditors who afterwards come in. In the absence of a lien by judgment or otherwise, the rule in equity, in such a case, is equality. The same doctrine is emphatically recognized by this court, in the case of *Younger* v. *Massey*, 41 S. C., 50.

The judgment of this court is, that the judgment of the Circuit Court be modified, in accordance with the views herein expressed; and that in all other respects the said judgment be affirmed. Let the case be remanded to the Circuit Court, for the purpose of carrying out the views herein announced.