## DuRANT v. DuRANT.

1. CORRECTED RULINGS.—Error cannot be properly assigned to the ruling of a trial judge admitting certain testimony, which he soon afterwards ruled to be inadmissible.

2. TRUSTEES—ACTIONS.—The eldest son of a deceased trustee, upon whom the trust devolves by operation of law, is entitled, as other trustees are, to be consulted before an action affecting the trust estate is instituted in his name. But he having permitted this action to proceed in his name without objection, this court reluctantly declined to dismiss the complaint.

3. FACTS IN LAW CASES.—This court cannot pass upon the weight of the evidence adduced before a jury in an action at law.

4. CHARGING JURIES.—Error cannot be properly assigned to a failure by the trial judge to charge that which was not requested.

5. FACTS IN LAW CASES—NEW TRIALS.—This court cannot consider alleged error on the part of the trial judge in refusing a new trial which was moved for on the ground that there was no evidence to sustain the verdict.

6. VOLUNTARY CONVEYANCE—FRAUD.—Where a debtor, in consideration of love and affection, conveys her entire estate to another in trust for herself for life, with remainder for A for life, with ulterior remainders, the conveyance operates as a fraud against her then existing debtors; and a purchaser of this land under judgments subsequently obtained on antecedent debts, acquired good tittle, not only against the first tenant for life who surrendered to him the possession, but also as against the subsequent remaindermen. The trial judge erred in limiting the fraud to operate only against such creditors as had obtained judgments before the voluntary deed was executed.

7. FORCING VERDICTS.—An exception imputing error to the trial judge

in saying to the foreman of the jury, when the foreman said the jury could not agree, "You have all next week to agree; go back to your room," not considered, 1. Because the remark may have been intended only to intimate that there was plenty of time if the jury desired it; 2. Because a new trial is to be ordered on other grounds.

Before ALDRICH, J., Sumter, March, 1891.

This was an action by David E. DuRant, trustee, against Isabella M. DuRant, for the recovery of a tract of land. Plaintiff claimed under a voluntary deed executed by Mary Carter, on September 22, 1866. The defendant claimed by successive conveyances, under two judgments against Mary Carter obtained in 1868; one of them being in favor of Brown, Winn & Co. on a debt contracted in 1860, and the other in favor of C. L. Crane on a note of November, 1866. The levy was under the Crane judgment, but the other judgment of same date received a portion of the proceeds of sale.

The judge charged the jury as follows:

This is an action brought by David E. DuRant, trustee, against Isabella M. DuRant, defendant. This is an action for trespass to try title, which means to recover the possession of this land. It is admitted on both sides, and was proven, that at one time, up to the 22nd of September, 1866, Mrs. Mary Carter owned the land in dispute. That is the common source. The plaintiff here recognizes that the title was then in Mrs. Mary Carter; the defendant also recognizes that the title was in Mrs. Mary Carter. The question therefore is, who had the best title from Mrs. Mary Carter, the common source?

On this day in 1866, Mrs. Mary Carter made a deed of conveyance to Jno. O. DuRant as trustee; by that deed the legal title passed from Mrs. Mary Carter to Jno. O. Durant. The deed contained a clause which made him the trustee for the parties in whom the equitable title vested. Upon what terms did Jno. O. DuRant take and hold that property? First, during the natural life of Mrs. Mary Carter he was to hold it as trustee, allowing her the use of the rents and profits of the place. Upon her death, Rachel M. DuRant, the wife of D. Reese DuRant, would enjoy the rents and profits during her natural life, and upon the death

of Mrs. Rachel M. DuRant, the property was to pass and belong
to the children of Reese and Rachel DuRant. The deed recites
that it was given for the natural love and affection she bore for
Mrs. Rachel M. DuRant, her niece.

Any one who has property has a right to give it away; but
let a man use his property so as not to injure others, and when
a man gives his property away, let him do so properly. It is
one of the rights that an owner of property has, and when one
gives away his property properly, it is a laudable action and is
praiseworthy. There is an old maxim of law, "One must be just
before he is generous." A man must pay his debts before he
indulges in the generosity of giving. If one is in debt, and for
natural love and affection conveys all the property that he has,
and does it intending to defraud, or does it intending to delay
any one in the collection of his money, such a deed is null and
void and of none effect; it is as though it had never been given.

Now, in this case there are questions of evidence which you
are to pass upon. The plaintiff here has shown this deed from
Mrs. Carter. The defendant sets up a chain of title, beginning
with the sheriff of Sumter County, one Coghlan, who appears on
the record here. This property, as I understand it, was levied
upon by three judgments: one is the Prescott judgment, another
the Brown, Winn & Co. judgment, and the other the Crane judg-
ment. These judgments were all obtained after the date of this
deed from Mary Carter to Jno. O. DuRant, trustee. If these
judgments were prior to the deed, the land would be subject to
the judgments and it would not be a legal deed; but that is not
the case, and I won't say what the law would be if such were the
case. It further appears that at the sale at that time there was
some contention about the homestead, and it appears that in Feb-
ruary, '69, part of the 907 acres of land was sold, sold under
three executions, Prescott, Brown, and Crane, and that the sale
at that time realized $705, which paid the Prescott judgment in
full and paid a part of the Brown judgment. The Brown judg-
ment was not in existence on March 1st, 1869, when the second
sale of 266⅔ acres was made, and it is alleged that this 166⅔
acres [here sued for] is part and parcel, as I understand it, of
the 266⅔ acres.

Now we come to the point in the case.   The judgment roll of
Brown, Winn & Co., that is the case, shows that the cause of ac-
tion was dated February 26, 1860, prior to the execution of this
deed.   Bear in mind that was the date of the debt, 1860, some
years prior to the execution of the deed.   Judgment upon that
note was obtained in 1867, after the execution of the deed.   Now,
then, in regard to the Crane judgment.   The note in that case
is dated after the execution of the deed, subsequent to the exe-
cution of the deed.   You have heard the testimony of Dr. Crane
and others, that the note was substituted for an old account ; he
explained to you what was the consideration and when it was.
The rule of law, as I have explained to you, can be applied here:
"A party must be just before he is generous." ' If the Crane
judgment existed prior to the execution of that deed, and that
deed was executed for the purpose of defrauding or delaying the
claim of Dr. Crane and nothing else, why, it is a fraudulent
deed—fraudulent in law.

At the time Dr. Witherspoon bought, there was another out-
standing judgment in favor of Brown, Winn & Co.   The judg-
ment was obtained upon a debt created in 1860.   Now, there-
fore, Dr. Witherspoon bought at that sale ; Dr. Witherspoon
being the purchaser subsequent, he must stand in the shoes, as it
were, of Brown, Winn & Co.   Carter has title which refers back
prior to the execution of the other judgment, so that if the con-
veyance of Mrs. Carter to DuRant as trustee, was to defraud or
delay the Brown claim, which was older, then that was a fraudu-
lent execution of the deed of Carter.   If you find that this judg-
ment was in existence prior to the execution of the deed, and
that the deed was executed to defraud or delay that claim, then
it was fraudulent and gave away the legal rights of the just cred-
ors of Mrs. Carter.

It is set up in the answer that the defendants are entitled to
hold this property by pleading the statute of limitation.   The
statute set up is one of repose to one in possession.   It is not
whether a person in possession stands upon other title ; it must
appear in the evidence for the person who claims the title that
the possession has been notorious and continued for the full period
of ten years.   If a party stands upon the possession of real es-

tate, and that possession has been notorious and continued for the full period of ten years, then he has the right to stand upon that possession. If you find that this defendant has been in possession of this land for the full period of ten years, and that possession has been notorious and continued for ten years, then she has a good title by possession.

In regard to the damages. The plaintiff asks $500 damages. If you find any damages, you can't find any more than the $500, the amount asked for by the plaintiff. Damages are intended as compensory damages, to compensate him by reason of being deprived of the possession. Not smart money to punish him, but merely compensory. If you find that the plaintiff is entitled to recover, your verdict will be: We find for the plaintiff the land described in the complaint, and so many dollars damages, if you find they have sustained any damages. If you find for the defendant your verdict will be: We find for the defendant.

The verdict of the jury was as follows: "We find for the plaintiff the within described land."

Defendant moved the court for a new trial upon the ground, that the evidence, which was neither explained nor controverted, conclusively established all the badges of fraud which rendered the deed of Mary Carter "void, frustrate, and of none effect," under section 1786, Gen. Stats. (13 Elizabeth), as to the defendant, who held under the judgments against Mary Carter; and that his honor should have so held as a legal question, or submitting the case to the jury should have so instructed them, which motion the judge refused.

From the judgment entered on this verdict, the defendant appealed on the grounds stated in the opinion.

*Messrs. Blanding & Wilson* and *Haynsworth & Cooper*, for appellant.

*Mr. A. B. Stuckey*, contra.

March 31, 1892. The opinion of the court was delivered by

Mr. Justice Pope. This action was commenced in the name of David E. DuRant, as trustee, plaintiff, against Isabella M.

DuRant, as defendant, in the Court of Common Pleas for Sumter County, on 9th September, 1889, to recover 166⅔ acres of land alleged to belong to the trust estate in the hands of plaintiff. The complaint, amongst other things, alleged that on the 22nd day of September, 1866, Mary Carter by deed conveyed to John O. DuRant a tract of land containing 900 acres, situate in Sumter County, upon the following trusts: for the use of the said Mary Carter for and during her natural life; at her death to the use of Rachel M. DuRant during her life; and at her death to be divided amongst "her distributees according to the law regulating intestacies as now of force;" that Mary Carter has been dead for many years, but Rachel M. DuRant is still living; that several years ago John O. DuRant died intestate, and the plaintiff, David E. DuRant, is his eldest son and his heir at law; that by reason of the deed of trust, the plaintiff became entitled to 166⅔ acres of land as a part of the original 900 acres tract of land, and that the defendant is in possession of the said 166⅔ acres of land and refuses to yield possession of the same. Plaintiff, as trustee, demands judgment for such possession and for $500 damages. The answer of the defendant denies all the allegations of the complaint, and alleges that the plaintiff was not seized in fee of such realty at the commencement of the action, pleads the statute of limitations from 10 years seizure thereof; and as a last defence sets up that the deed of Mary Carter, executed in 1866, is fraudulent and void as to the defendant and those from whom she claims title to this 166⅔ acres of land.

The action came on for trial before Judge Aldrich and a jury. Verdict was rendered for plaintiff for the land in dispute. After entry of judgment thereon, the defendant appealed on the following grounds:

1. For that his honor erred in ruling as competent, over the objection of defendant's attorneys, the testimony of Mrs. Rachel M. DuRant as to a conversation of the said Rachel M. DuRant with one Giles Carter.

2. For that his honor erred in refusing the motion of defendant's attorneys that the action be dismissed, after the plaintiff testified that he neither instructed nor authorized this action to be brought.

3. That the facts proved were conclusive that the deed of Mary Carter to John O. DuRant, trustee, was fraudulent and void, and no one of these facts was either rebutted, contradicted, or explained, and the jury should have found a verdict for defendant.

4. That his honor erred in not charging the jury that the facts proved were conclusive that the deed of Mary Carter to John O. DuRant, trustee, was fraudulent and void, unless they believed that such facts were satisfactorily explained.

5. That his honor erred in not granting defendant's motion for a new trial as there was no evidence to support the verdict.

6. For that his honor erred in charging the jury as matter of law, "If the Crane judgment existed prior to the execution of that deed" (deed of Mary Carter to John O. DuRant, trustee) "and that deed was executed for the purpose of defrauding or delaying that claim of Dr. Crane and nothing else, why, it is a fraudulent deed."

7. For that his honor erred in charging the jury as matter of law, "If you find that this judgment" (referring to the judgment of Brown, Winn & Co.) "was in existence prior to the execution of the deed" (deed of Mary Carter to John O. DuRant, trustee), "and that this deed was executed to defraud or delay that claim, then it was fraudulent, and gave away the legal rights of the just creditors of Mary Carter."

8. That this court should order a new trial in this case, because the foreman of the jury came into open court and stated to the judge that the jury could not agree upon a verdict; the judge said, You have all next week to agree; go back to your room.

We will examine these grounds of appeal in their order. 1. When the question as to the competency of the testimony of Mrs. Rachel M. DuRant, who was questioned as to a conversation of herself with Giles Carter, the husband of Mary Carter, was first raised, the judge did rule it competent, but, upon reflection, he afterwards ruled that it was inadmissible. It is impossible but that some momentary oversights should occur with judges, but when they were so soon corrected as in the case at

bar, we cannot on this ground grant a new trial. This exception must be overruled.

2. It seems that Mary Carter by her deed appointed John O. DuRant trustee for Mrs. Rachel M. DuRant. When he died intestate, by operation of law this trust was devolved upon the present plaintiff, he being the oldest son and heir at law. Such being the case, the plaintiff was compelled by law to discharge any duty incident to the trust, and if at any time he failed to do so, the Court of Equity would compel him to do so. A trustee once invested with the duties of his office can only be released in one of three ways : "1. By assent of all his *cestuis que trust*," capable of consent ; "2. By means of some special power in the instrument creating the trust;" and "3. By an application to the Court of Chancery." Adams Equity, 38. If at any time in the discharge of the duties of his office, it becomes necessary to obtain the directions of such court, it is competent for him to do so voluntarily; but if the exigencies of his trust require action on his part to protect or preserve the property confided to his keeping, and he refuses or neglects to do so, the court, on a proper application, will enforce such action on his part. Adams Equity, 61.

The relation of trustee importing such serious responsibilities to such a one as assumes the office, or to one upon whom it is devolved by operation of law, it does seem that he has the right of being consulted before an action is brought in his name as such trustee, and not only so, but that he should control such suit in the employment of his attorney and otherwise. To recognize the right of a *cestui que trust* to bring an action in his name without his direct authority therefor, is an unwise interference with his office, and is not sanctioned by the law. Among other difficulties produced thereby, the expense of litigation, costs, and counsel fees, may eat up the *corpus* of the trust estate. In the case at bar, we would censure the parties for nothing more than a violation of the letter of this rule, for although the trustee here was not consulted at the inception of the litigation, he was consulted just after it was begun, and did not refuse his assent. As a witness here, he said he supposed the suit would have to be brought. Besides he does not, as trustee, formally complain to the court

that this use of his office as plaintiff was unwarranted.   It is the defendant who complains, and while a defendant is entitled to be confronted by a plaintiff, yet in this case the trustee does represent whatever interests are here involved of the life tenant, Mrs. Rachel M. DuRant, who is one of the *cestuis que trust* of the plaintiff, and it is her estate that is in question.

· We can and do appreciate the awkward position in which the plaintiff, by no fault on his part, occupies in this case.   At the instance of his father, and to further the interest of the family of Mr. Reese DuRant, the husband, he did help to procure Edgarton and Parker to buy this identical land at a price that put $1,800 into the hands of such husband, who, according to the testimony, "is a good provider for his family."   No doubt he resented very keenly the necessity of having himself placed, so to speak, in the unenviable position of procuring to be done, as entirely proper, something that it is now sought to be undone as a palpable wrong. We hope that it will be a consoling reflection to such trustee, that he never dreamed of such a result.   We overrule the exception, *but very reluctantly.*

3. This exception is opposed to the plain, unvarying rules laid down by this court for the information of the profession.   It is palpably an attempt to have this court decide upon the weight of the testimony adduced at the hearing.   This is never done here.   Let the exception be overruled.

4. This exception seems to point to an omission on the part of the Circuit Judge in his charge.   It was not brought to the attention of the trial judge by any request to charge. The exception is overruled.

5. In the form of this exception, we cannot sustain it, for we cannot say that "there was no evidence to sustain the verdict."

6. We think the Circuit Judge erred in the matter to which this exception relates.   By the testimony, adduced in behalf of the plaintiff here, it was demonstrated that when Mary Carter made the deed of trust in September, 1866, she not only owed money, but was being sued by at least one of her creditors, yet in view of this condition of her business with others, she deliberately, for love and affection, conveyed to a

trustee *her entire estate*, both real and personal, *reserving to her-self* the right of a life estate in the whole. It is useless, under such circumstances, to speak as did one of the plaintiff's witnesses in answer to the question, "Do you know whether or not there was any actual fraud, or any intention to defraud anybody by Mrs. Carter?" by saying, "No, sir, not a bit. She was as clear of such a thing as if she were an infant." The very act itself, of putting as far as she could every vestige of her estate in the hands of a trustee for others, retaining by such deed the enjoyment of all that property during her life, *is made by the law a fraud, and vitiates the deed* as to existing creditors. *Twyne's Case*, 1 Sm. Lead. Cas., 1 (3 Co., 80); *Smith* v. *Henry*, 1 Hill, 16; *Anderson* v. *Fuller*, McMull. Eq., 27; *Ryan* v. *Clanton*, 3 Strob., 413; *Werts* v. *Spearman*, 22 S. C., 209, and cases there cited. The creditors could treat this act, on her part, in two ways: either set on foot in the Court of Equity an action to set the deed aside for fraud, or, on the other hand, they could disregard the deed and after obtaining judgment sell this property, and, if not delivered up to the purchaser, bring an action for its recovery. In the case at bar, the creditors of Mary Carter, after obtaining judgment, sold her property under the executions against her in her life-time, and the property was surrendered without other litigation.

But it will be contended, that if it was surrendered, such surrender took place before Mrs. Rachel M. DuRant had the right to speak; that Mrs. Carter did not die until 1871, and the property had been surrendered before that. Grant this, and what difference does it make now that Mrs. DuRant seeks to set up the deed of September, 1866, of Mrs. Carter as the basis of her rights here? If it was a fraudulent deed, it was void at its execution and ever since that time. The Circuit Judge here fails to grasp the situation of the parties when he speaks in his charge that "If the *Crane judgment* was obtained before the deed, and that deed was executed for the purpose of defrauding or delaying that claim of Dr. Crane, and nothing else, why, it is a fraudulent deed." Of course, the Crane judgment was obtained after the deed. The deed was made in 1866, and the Crane judgment was obtained afterwards. The judgment is not the *debt*. It is only a remedy

for its enforcement.  It is the wrong to the creditor that is done. His rights, as to his debt, began, so far as Mrs. Carter was concerned, when she contracted the debt.  At that time the law made her so act as to preserve good faith to him so far as disposing of her property was concerned, and at the very instant of time that she used her property so that every part thereof was conveyed away, for love and affection, in trust for others, reserving for herself the right to use the same during her life, it was a fraud upon such creditors' rights.  It is true he had to wait until he obtained his judgment in order to vindicate his rights, yet those rights of the creditor were violated the instant the deed was executed.  It is useless to say the jury did not misunderstand the judge's charge when he used the word judgment in its connection therein. There is no person more wide awake in a court of justice than the ordinary juror; he understands a judge's every word that pertains to the ordinary affairs of life, and he knows the meaning of the word "judgment" in connection with a suit only too well. This exception is sustained.

7.  This exception is similar in letter and spirit to that we have just considered, numbered "6."  It is greater error here, because this debt was created in *1860.*  It must be sustained.

8.  We do not feel called upon to pass upon this, except for two reasons—one, because the language of the Circuit Judge is susceptible of the construction, that there would be plenty of time furnished the jury if they so desired, even going into the next week.  If such was his meaning, it was no interference with the jury.  The second is, that we have already indicated our purpose of granting a new trial here.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the action remanded to the Circuit Court for a new trial.