### · TURNER v. WASHINGTON REALTY CO.

#### (120 S. E., 871)·

1. MARSHALING ASSETS AND SECURITIES—SENIOR JUDGMENT CREDITOR ENTITLED TO INTERVENE AFTER RENDITION OF JUDGMENT FIXING PRIORITIES AND ORDERING SALE.—In an action by a junior judgment creditor to set aside a deed as fraudulent, in which action four prior mortgages were made parties defendant, though judgment had been rendered, the priorities fixed, and the property sold to plaintiff under a Court order that it was to be sold "freed from all liens," *held* that, under Code Civil Procedure 1912, §§ 171, 225, a senior judgment creditor was entitled to be made a party defendant and to have the judgment modified accordingly, as plaintiff and the Court treated the suit as one to marshal assets.

2. FRAUDULENT CONVEYANCES—JUDGMENT CREDITOR NOT REQUIRED TO MAKE LIEN · CREDITORS PARTIES.—A judgment creditor need · not make lien creditors parties to his · action· to set aside judgment debtors· deed as fraudulent.

3. FRAUDULENT CONVEYANCES—REMEDIES OF JUDGMENT CREDITOR IN CASE OF FRAUDULENT CONVEYANCE BY JUDGMENT DEBTOR.—Where an insolvent judgment debtor has fraudulently conveyed his property, a judgment creditor may levy execution, sell the property, bid it in, and sue for possession, or bring an action to set aside the conveyance, and if successful, to levy execution and sell, or bring a creditors' bill to set aside the conveyance and sell the property· under order of Court, distributing the proceeds according to priorities.

· 4. FRAUDULENT CONVEYANCES—SENIOR JUDGMENT CREDITOR MAY INTERVENE IN ACTION BY JUNIOR JUDGMENT CREDITOR TO SET ASIDE FRAUDULENT DEED.—A senior judgment creditor is not compelled to intervene in an action by a junior judgment creditor to set aside

a fraudulent deed of judgment debtor, but where the Court has assumed control over the res for the purpose of selling it, "freed from all liens," and notice of *lis pendens* has been filed, senior judgment creditor acts with proper caution in intervening and not leaving the case open for further litigation.

5. PARTIES—ALLOWING SENIOR JUDGMENT CREDITOR TO INTERVENE WITHOUT DUE NOTICE IN CREDITOR'S ACTION HELD ERROR.—Where junior judgment creditor brought an ,action to set aside a conveyance by judgment debtor, allowing a senior judgment creditor to intervene without due notice to junior judgment creditor *held* error.

Before TOWNSEND, J., Richland.    Affirmed in part and reversed in part.

Action by J. E. Turner against the Washington Realty Company and others.    From an order granting the petitions of the Columbia Savings Bank & Trust Company and the Nicholson Bank & Trust ·Company of Union, S. C., to be made parties defendant, plaintiff appeals.    Affirmed in part, and reversed in part.

See, also, 118 S. E., 27, 30.

The return of the plaintiff to a rule to show cause, issued, by Circuit Judge Townsend, was as, follows:

Plaintiff above named by way of return to the order to show cause respectfully shows to the Court:

(1) Because the petition shows upon its face that· a final Judgment has been rendered in this cause and therefore his honor was without jurisdiction to pass any order in this case on motion of a party who is a stranger to the record.

(2) Because one Circuit Judge has no power or right to change, add to, modify, or restrain the order of another Circuit Judge, and especially at the instance of a stranger to the record.

(3) Because it appears on the face of the petition that .the petitioner's judgment was rendered on the 30th day of June, 1916, an dit also appears that before the said judgment was rendered Washington Clark had conveyed to the Washington Realty Company the tract of land involved in this suit, which deed was duly recorded on the 23d day

of June, 1916, in Book of Deeds BO, at page 556; said deed having been executed on the 13th day of June, 1916.

(4) Because it appears on the face of the petition that the plaintiff, James E. Turner, alone brought action to set aside said deed, and the petitioner was neither a necessary or a proper party to said action; said action not being a creditor's bill and not brought for the benefit of any creditor other than the plaintiff.

(5) Because it appears upon the face of the petition that the said sale made by R. O. Purdy, Esq., Special Referee, has not yet been complied with, and therefore there is nothing to enjoin.

(6) Because it appeared on the face of the complaint that there is a large amount due on valid mortgages covering said building, and before the petitioner has any standing in Court he must offer to pay off the amount due on said mortgages, the amount due on the two judgments whose holders intervened in said suit and who had liens upon the real estate of Washington Clark before he conveyed said property to the Washington Realty Company, and which judgments were ordered paid by the Court in this case in the original decree which is on file in this Court.

(7) Because it appears upon the face of the petition that the petitioner has no lien upon the property of Washington Clark; its judgement having confessedly been obtained since the conveyance of Washington Clark to the Washington Realty Company.

(8) Because said petition does not allege that any execution was ever issued against the said Washington Clark, and therefore petitioner is not in a position to maintain any claim either to the real estate or to the proceeds of sale of the property.

(9) Because, previous to the commencement or at the time of the commencement of the action of the plaintiff herein, *lis pendens* was duly filed and was notice to the petitioner and all other alleged creditors of the said Wash-

ington Clark of the claims of the plaintiff, and any person claiming under said alleged judgment takes subject to the *lis pendens* and cannot set up any claim, either against the the fund arising from the sale, or against the land itself.

(10) Because, in so far as the petitioner is concerned, said conveyance of Washington Clark to the Washington Realty Company is in full force and effect, as said petitioner, with full knowledge of said conveyance, has sat quiet for more than six years since the date of said conveyance, has made no effort to set it aside, and is barred by the statute of limitations, and no longer has any claim to the real estate described in this proceeding, or any valid lien or claim upon the proceeds of said sale, for the reason that said petitioner was not a party to said suit, and has no right to come into said case and claim any right or interest therein.

(11) Because it is not alleged in the petition herein that the conveyance of Washington Clark to the Washington Realty Company was made with any intent to defraud the petitioner, or as a matter of fact that he was defrauded, and therefore said petition fails to state any reason why the petitioner is entitled to any relief in this case.

(12) Because it appearing on the face of the petition herein that the petitioner was not a party to the suit of J. E. Turner against the Washington Realty Company, and was not a necessary party thereto, and not having asked to be allowed to come in and set up its claims, cannot after final judgment has been rendered in said case, come before the Court and ask the Court to vacate and reopen said judgment, so as to allow it to come into said case.

(13) Because the petitioner has no right or claim to any of the proceeds of said real estate, and has no right to set up in this proceeding any such claim, not being a party to said action, and its claim, if it has any, being against the property itself, and not against the proceeds of sale.

(14) Because the action in which this property was sold, was not a creditors' bill, but was an action brought by the

plaintiff for his own benefit, and he is entitled to the whole proceeds of sale, except as directed by the order of Judge ·Peurifoy, and no other Court or Judge has the right to change in any way the rights of the parties as fixed by said decree.

(15) Because the plaintiff having filed his bill to set aside the conveyance of Washington Clark to the Washington Realty Company, as being a fraud on his rights, and the Court having set it aside solely on that ground, and having rendered a final judgment in the case, providing for the final disposition of the proceeds of sale, and there having been no appeal from said judgment and decree, no outside person has any right under said decree to any of the proceeds of sale, nor has any Circuit Judge, not even Judge Peurifoy himself, the right to change said decree so as to provide for any other disposition of the funds arising from said sale, than that fixed by said decree of Judge ·Peurifoy.

(16) That the plaintiff denies so much of the allegations of paragraph 5 of the petition as alleges that Judge Peurifoy set aside said deed of Washington Clark and held that it was subject to the lien of the judgments recovered against him, but on the contrary set said deed aside as being made with intention of defrauding said J. E. Turner and did not decide that it was for the purpose of defrauding any one else.

(17) That the plaintiff denies so much of paragraph 8 of the petition as alleges that the judgment of the petitioner is prior and superior in rank to the plaintiff's judgment, but on the contrary alleges that petitioner has no lien whatever on either the proceeds of sale or upon the land itself; the said Washington Clark not being the owner of said premises at the time petitioner obtained his lien, and said conveyance never having been attacked by the petitioner, and the same being a valid conveyance so far as the petitioner is concerned

(18) Because said property in question having been sold by a decree of the Court of Equity, the purchaser under said decree takes such rights as the decree gives him, and no one, not a party to the action, can come into the case after a final decree and set up any claim to the proceeds of sale, or ask for any relief in said cause, but must set up his claim in an independent action, with a proper complaint, stating the grounds of his claim.

(19) Because the petitioner, not having set up his claim prior to the judgment in this case, cannot be allowed to come into Court after the cause has been won by another party, and claim to share in the proceeds, without offering to contribute to the expense and without offering to pay the first liens on the property.

(20) Because it is the doctorine of equity that *"vigilantibus, non dormientibus, jura subveniunt,"* and, applying that rule to this case, the petitioner shows that he has exercised no dilligence and is not entitled to share in this fund.

(21) Because petitioner had knowledge of the fact that Washington Clark had conveyed away his property just before petitioner recovered its judgment, yet it sat silent, made no effort to subject said property to the payment of his debt, and is now barred by the statute of limitations, and by its laches in asserting any claim or lien on said property.

(22) Because no Circuit Judge has power at chambers to set aside or modify any judgment rendered by any other Circuit Judge, or himself, or even correct a mere clerical error, unless it is done within ten days after said alleged error is made.

(23) The plaintiff denies the allegations of paragraph 10 of the petition herein, denies that Judge Peurifoy overlooked anything, but on the contrary alleges that he did just what he intended to do, and made the proper decree in said cause, and it is petitioner's own fault if it was not represented

at said hearing and not the fault of the plaintiff, or of the presiding Judge, but solely because petitioner ignored the *lis pendens* filed at the time the action was begun.

Wherefore, the plaintiff, having made full return to the order and petition heretofore served upon him, prays that the same be dismissed.

The plaintiff's exceptions were as follows:

(1) Because the petition showing on its face that a final judgment had been rendered in the case, his Honor was without jurisdiction to pass any order in said case except by consent of the parties or their attorneys.

(2) Because Judge Townsend had no jurisdiction, right, or power to change, add to, modify, or restrain the order of Judge Peurifoy, and erred in so doing.

(3) Because it appearing on the face of the petition that the petitioner's judgment was rendered on the 30th day of June 1916, and it also appearing that before said judgment was rendered Washington Clark had conveyed to the Washington Realty Company the lot of land involved in this suit, which deed was duly recorded on the 23d day of June, 1916, the proceedings of the petitioner was barred by the statute of limitations, and his Honor erred in not so holding.

(4) Because, it appearing on the face of the petition that the plaintiff, James E. Turner, alone brought action to set aside said deed, petitioners were neither necessary nor proper parties to said action, and it was in error in his Honor to set aside the decree of Judge Peurifoy and allow them to come in.

(5) Because it appears on the face of the petitions that the sale made by R. O. Purdy, Esq., has not yet been complied with, and therefore there was nothing to enjoin, and his Honor erred in granting said injunction.

(6) Because his Honor erred in granting an injunction without requiring the petitioners to put up an injunction bond.

(7) Because it appears upon the face of the petitions that there is a large amount due on valid mortgages covering said real estate, and a large amount due on judgments covering said property, and before said petitioners could have any standing in Court it was necessary that they should offer to pay all the liens on said property which had already been established in said cause, and his Honor erred in not so holding.

(8) Because it appears upon the face of the petition that the petitioners have no lien upon the property of Washington Clark, said judgments having confessedly been obtained since the conveyance of Washington Clark to the Washington Realty Company and said conveyance never having been set aside so far as said petitioners are concerned, and his Honor erred in not so holding.

(9) Because the petitions do not allege that any executions have ever been issued on said judgments, and therefore petitioners are not in a position to maintain any claim either to the real estate or to the proceeds of the sale of said property, and his Honor erred in not so holding.

(10) Because, at the time of the commencement of the action by the plaintiff herein, *lis pendens* was duly filed and was notice to the petitioners and all other alleged creditors of the said Washington Clark of the claims of the plaintiff, and any persons claiming subsequent to the filing of *lis pendens* take subject thereto and cannot set up any claim against the property or against the funds arising from the sale of the property, and his Honor erred in not so holding.

(11) Because, in so far as the petitioner Columbia Savings Bank & Trust Company is concerned, said conveyance of Washington Clark to the Washington Realty Company is in full force and effect, as said petitioner, with full knowledge of said conveyance, has sat quiet for more than six years and has made no effort to set it aside, and is barred by the statute of limitations and by laches, and has no claim to the real estate described in this proceeding or any valid lien

or claim upon the proceeds of said sale, and his Honor erred in not so holding.

(12) Because said petitioners were not parties to said suit and have no right to come into said case and claim any right or interest therein, and his Honor erred in not so holding.

(13) Because it is not alleged in the petitions herein that the conveyance of Washington Clark to the Washington Realty Company was made with any intent to defraud the petitioners, or that, as a matter of fact, they were defrauded, and therefore said petitioners fail to state any reason why the petitioners are entitled to any relief in this case, and his Honor erred in not so holding.

(14) Because it appears upon the face of the petition herein that the petitioners were not parties to the suit of J. E. Turner against the Washington Realty Company et al., and were not necessary parties thereto, and, not having asked to be allowed to come in and be allowed to set up their claims during the pendency of said action, cannot, after final judgment has been rendered in said case come before the Court and ask the Court to vacate and reopen said judgment so as to allow them to come into said case and claim the fruits of the plaintiff's victory, and it was error in his Honor not to so hold.

(15) Because the petitioners have no right or claim to any of the proceeds of said real estate and have no right to set up in said petition any such claims, not being parties to said case, and their claims, if they have any, being against the property itself, and not against the proceeds of sale.

(16) Because the action in which this property was sold was not a creditors' bill, but was an action brought by the plaintiff in his own name, for his own benefit and he is therefore entitled to the whole proceeds of sale, except as directed by the order of Judge Peurifoy, and no Court or Judge has any jurisdiction, right, or power to change in

any way, the rights of the parties to said action, as fixed by said decree, and his Honor erred in not so holding.

(17) Because said motions were made under Section 225 of the Code of Civil Procedure and said section does not allow said motion to be made by any one who was not a party to the action, and his Honor erred in holding that said motions could be made by the petitioners when they were not parties to the action and had no right to make said motions.

(18) Because said motions were not made on the grounds of the mistake, surprise, or excusable neglect of the petitioners but were made upon the ground that Judge Peurifoy had made a mistake, and for a mistake made by the Court no one can take any advantage under said Section 225 of the Code, and his Honor erred in not so holding.

(19) Because his Honor erred in granting an injunction in this case, after final judgment had been rendered, and without requiring any bond.

(20) Because his Honor erred in forcing the plaintiff to argue the case of the Nicholson Bank & Trust Company without notice and without even allowing the plaintiff time to file a return to said petition, when the plaintiff called his attention to the fact that the petition was served only a few minutes before and objected to hearing said petition.

(21) Because it appeared on the face of the petition of the Nicholson Bank & Trust Company that the judgment in their case was obtained long after the conveyance of Washington Clark to the Washington Realty Company was made, and therefore said bank could not have been defrauded by said conveyance, and it was error in his Honor not to so hold.

(22) Because it was error in his Honor to enjoin the order of another Circuit Judge, having equal jurisdiction with himself, to set aside said order, and to reopen the whole case and refer it to a Special Referee, to hear and decide

all issues of law and fact, without the consent, and over the protest of the plaintiff and his counsel.

*Messrs. Graydon & Graydon,* for appellant, cite: *One Circuit Judge had no authority to change order of another:* 16 S. C., 362; 15 S. C., 535; 14 S. C., 324; Greenl. Ev., 543; 30 How. Pr., 340; 5 Hill (N. Y.), 495; 4 Abb., 103; 3 Waits Pr., 423; 43 S. C., 299; 73 S. C., 579; 27 S. C., 177; 30 S. C., 329; 32 S. C., 57; 40 S. C., 79; 44 S. C., 383; 69 S. C., 570; 19 S. C., 252; 112 S. C., 295; 118 S. C., 189. *Petitioner barred by limitation*s 4 S. C., 249; 61 S. C., 34; 55 S. C., 285; 33 S. C., 28. *Petitioner not a necessary party:* 23, 37 S. C., 214; 41 S. C., 50. *Premium on dilligence by creditor:* 12 Cyc., 61; 2 Wall., 237. *Judgment obtained after conveyance:* 1 Hill Ch., 119.

*Messrs. Melton & Belser* for Columbia Savings Bank & Trust Co., respondent, cite: *Where deed is set aside liens against grantor take effect as if deed had not been executed:* 3 Strob. Eq., 58; 36 S. C., 49; 37 S. C., 214; 41 S. C., 50; 44 S. C., 65. *Right of Circuit Judge to set aside decree for distribution and permit petitioners to set up claims:* 47 S. C., 263; 51 S. C., 405; 53 S. C., 223; 64 S. C., 223; 4 Rich. Eq., 58; 64 S. C., 342. *Necessary parties:* 15 Enc. Pl. & Pr., 251; 81 S. C., 265. *Six years after discovery of fraud is period of limitation:* 37 S. C., 369; 98 S. C., 403.

May 14, 1923.   Rehearing refused December 1, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of Hon. W. H. Townsend, Circuit Judge dated July 5, 1922, granting the petitions of the respondents Columbia Savings Bank & Trust Company and Nicholson Bank & Trust Company of Union, S. C., to be made parties defendant in the main cause above stated of James E. Turner against Washington Realty Company

and others, and modifying a previous order of Hon. J. E. Peurifoy in said cause, dated April 7, 1922, to the extent hereinafter explained.

The main cause arose out of the following facts:

On the————————day of——————————, 191———, the plaintiff therein, James E. Turner, recovered a judgment against Washington Clark, the balance unpaid upon which, on April 26, 1921, the date of the Special Referee's report, was $32,501.47, with interest from December 1, 1918. The date of the judgment is not given in the record, but it was prior to the death of Washington Clark, which occurred in November, 1918.

On the 10th of June, 1916, Washington Clark conveyed to the defendant Washington Realty Company, a corporation organized and principally owned and controlled by him, a certain piece of property in the city of Columbia, near the County Courthouse, known as the Clark law building; the deed was recorded on June 23, 1916.

On March 24, 1920, the plaintiff, James E. Turner, instituted the main cause against Washington Realty Company, W. A. Clark, J. C. Townsend, Mary Etta C. Clark, individually, and as administratrix and as heir at law of Washington Clark, deceased, Katherine Stuart Clark, individually and as heir at law of Washington Clark, deceased, and certain other parties, hereinafter named, holding mortgages upon the Law building referred to, for the purpose of having the deed from Washington Clark to Washington Realty Company, dated June 10, 1916, hereinafter referred to, declared null and void and set aside as in fraud of the creditors of Washington Clark.

At the date of the institution of the main cause, the following liens, by mortgage and judgment, executed by and recovered against Washington Clark were existing: (1) Directors of Columbia Theological Seminary—mortgage executed December 17, 1909, to J. Caldwell Robertson, and subsequently assigned to the seminary, for $14,000.

(2) Mary Etta C. Clark—mortgage executed December 18, 1909, to Elizabeth C. Melton, and subsequently assigned to Mrs. Clark, for $4,339.95, with interest from April 1, 1922, and 5 per cent. attorney's fees. (3) Mary Etta C. Clark—mortgage dated October 22, 1915, for $7,000.

(4) Amy S. Weston—judgment, entered February 7, 1916, in favor of National Loan & Exchange Bank, and subsequently assigned to Mrs. Weston, for $4,306.68, upon which there appears to be due as of April 1, 1922, $1,540.17, with interest from that date. (5) Carolina National Bank—mortgage, dated April 22, 1916, executed to Mary C. Brockman, and subsequently assigned to the bank, for $7,000. (6) Fletcher Brockman—judgment, entered May 30, 1916, in favor of T. B. Stackhouse, and subsequently assigned to Brockman, for $31,081.58, upon which there appears to be due, as of April 1, 1922, $1,344.74, with interest from that date. (7) Columbia Savings Bank & Trust Company—judgment entered June 30, 1916, for $1,604.83, with interest from July 7, 1916. (8) Nicholson Bank & Trust Company of Union, S. C.,—judgment, entered February, 1918, for $5,305.45, with interest from that date. (9) James E. Turner; judgment entered——————, 191—, for $————, with interest from date, amount unpaid on December 1, 1918, being $32,501.47, bearing interest from that date.

The following mortgage creditors were made parties to the main cause:

| | |
|---|---:|
| 1. Theological Seminary | $14,000.00 |
| 2. Mary Etta C. Clark | 4,339.95 |
| 3. Mary Etta C. Clark | 7,000.00 |
| 5. Carolina National Bank | 7,000.00 |
| | $32,339.95 |

The "case" contains this statement:

"The interest (upon these mortgages) having been practically paid up (i. e. up to the date of the referee's report)." The parentheses are added.

For some reason the other lien creditors (judgment creditors), were not made parties to the suit:

4.  Amy S. Weston............................................. $1,540.17
5.  Fletcher Brockman....................................... 1,344.74
7.  Columbia Savings Bank & Trust Co.................. 1,604.83
8.  Nicholson Bank & Trust Co........................... 5,305.45

The complaint alleges, in substance, that Washington Clark, being then heavily indebted, and with a view to hinder and delay his creditors, made the conveyance in question in fraud of his creditors. The defendant Mary Etta C. Clark answered, denying the allegations of fraud, and setting up the several amounts due to her. The other defendants, it is assumed, answered setting up their liens. The case was referred to Hon. R. O. Purdy, as Special Referee. He held a number of references, took the testimony, and made a report dated April 26, 1921, in which he held that the conveyance was voluntary, in legal fraud of the rights of creditors, and should be set aside. He also reported upon the mortgages of the defendant mortgagees, as above indicated, and recommended that Amy S. Weston and Fletcher Brockman, assignees of the judgments numbered 4 and 6 above, be made parties and allowed to prove their claims. It does not appear in the "case" upon what authority they did so, but the statement appears that they "were duly made parties, appeared and proved their debts"; and the same appears in the decree of Judge Peurifoy.

Upon exceptions to the report of the Special Referee, the matter was heard by his Honor, Judge Peurifoy, who on April 7, 1922, filed a decree, confirming the report of the referee, directing the cancellation of the deed in question, settling the priorities of the lien creditors who were before him, and ordering a sale of the property and a distribution of the proceeds as follows: 1. Costs and expenses. 2. The Seminary mortgage (No. 1). 3. The Melton mortgage (No. 2). 4. Mary Etta C. Clark mortgage (No. 3). 5. The Brockman mortgage (No. 5). 6. The homestead of

Mrs. Clark, $1,000.  7. The Weston claim, judgment of National Loan & Exchange Bank (No. 4).  (It is not clear why the Brockman mortgage, No. 5, dated April 22, 1916, was allowed priority over this judgment dated February 7, 1916.)  8. The Brockman claim, judgment of Stackhouse (No. 6).  9. The remainder to the plaintiff, James E. Turner, upon his judgment.  From this decree no appeal has been taken by any of the parties.

The property was duly advertised, and a sale had at public auction, on the first Monday in May, 1922, at which time it was bid off by the plaintiff, J. E. Turner, at $65,000. He made the $5,000 deposit as required, but failing to comply with his bid, the property was readvertised and resold in June, at which time it was again bid off by Turner, at $60,000.  He made the $5,000 deposit as required for this sale, but no further steps have been taken; his bid remains uncomplied with on account of the subsequent proceedings to be noted.

On June 28, 1922, Columbia Savings Bank & Trust Company, in whose favor, as stated above, a judgment was entered against Washington Clark on June 30, 1916, for $1,604.83 (No. 7), filled a petition in the main cause, setting forth the various proceedings above detailed, alleging that it had not been made a party to said cause, that by virtue of said judgment it had a lien upon the property sold, and praying that it be made a party to the cause, that it be permitted to set up and establish its judgment lien, and that the administrative portion of the decree of sale be modified so as to provide for the payment of said judgment, next after the Brockman claim, and before the plaintiff's judgment.

Thereupon, on June 28, 1922, the Honorable W. H. Townsend, Circuit Judge, passed an order requiring the parties to show cause before him in open Court on July 3, 1922, why the petition should not be granted, and enjoining the distribution of the proceeds of sale pending the hearing

of the petition.   The order and petition were served upon the plaintiff on the following day.   The plaintiff served a lengthy answer to the rule, containing 23 grounds of objection.   Let the return be reported.

The matter then coming on to be heard, the Presiding Judge passed an order, dated July 5, 1922, allowing the petitioner to be made a party defendant and further provided:

"That so much of the judgment rendered by this Court, in the above-entitled action at the past April term, as provided for the distribution of the surplus proceeds of sale of the real estate ordered sold in this action, after the payment of the amounts therein found to be due to the mortgage creditors therein mentioned be vacated and set aside, and the cause recommited and referred to the Honorable R. O. Purdy as Special Master, with directions to take the testimony and report the same with his findings of fact and conclusions of law with reference to claims of petitioners stated in their petitions heretofore filed, and as to the priority of the various judgment creditors who may prove their rights to participate in the distribution of said proceeds of sale; and also to take testimony and report what would be a proper fee to be allowed the plaintiff's attorneys as a part of the costs and expenses of this action (and to be paid them prior to the application of any part of such proceeds to payment of the amounts due the judgment creditors) for their services rendered in the prosecution of this action, as far as was necessary to obtain the decree and judgment vacating and setting aside said deed of conveyance and for the sale of said property."

On June 30, 1922, Nicholson Bank & Trust Company, in whose favor, as stated above, a judgment was entered against Washington Clark on February——, 1918, for $5,305.45 (No. 8), filed a similar petition in the main cause, and asked for a similar order and rule.   Judge Townsend, before whom the application was made, stated that—

"He had already issued a rule to show cause upon the petition of the Columbia Savings Bank & Trust Company, and that one rule would suffice; that he would hear both petitions together upon the one rule, since both petitions raised identical questions."

Both petitions were accordingly heard at the same time, and the order which Judge Townsend passed included the Nicholson Bank & Trust Company as well as the Columbia Savings Bank & Trust Company.

At the hearing, the attorneys for the plaintiff entered an objection to the hearing of the Nicholson Bank & Trust Company's petition and the affidavit in support of it, upon the ground that the petition had not been served upon the plaintiff, and no order had been passed in reference to it. The Circuit Judge overruled the objection, and proceeded to hear the matter along with the other petition. The plaintiff has appealed from the order of July 5, 1922, upon numerous grounds, which will be reported.

1, 2      Considering first the appeal from so much of the order as affects the Columbia Savings Bank & Trust Company alone, reserving for the time consideration of so much of it as affects the Nicholson Bank & Trust Company.

That the plaintiff intended that the Court should take the property in hand, sell it, distribute the proceeds of sale, among the lien creditors according to their priorities appears beyond a doubt. He made the four mortgage creditors parties defendant, and asked that they be required to present and prove their claims in that proceeding. In his action as a judgment creditor to set aside the deed as fraudulent, he was not required to make any lien creditors parties. The fact that he made some of them parties, asked that they be required to prove their claims in that suit, and allowed, without exception, two other judgment creditors to be made parties and prove their judgments, indicates a purpose on his part to treat the complaint as a bill to marshal

assets, and shows that the failure to include all the lien creditors, was an inadvertent omission.

The report of the Referee, confirmed in all particulars by the decree, demonstrates very clearly that he so understood the complaint and the purpose of the plaintiff. Speaking of the Weston and Brockman judgment claims, the Referee says:

"It seems to me that it would not be wise to permit it (the property) to be offered for sale subject to these outstanding liens, and leave the case open for further litigation."

He then recommended that the property be sold at public auction, for cash, "freed from all liens." It does not appear that the plaintiff took any exception to these recommendations. Certain it is that the decree of Judge Peurifoy "confirmed in all particulars" the report, and that no notice of appeal was filed by any of the parties thereto.

The plaintiff had any one of three remedies: (1) To levy his execution, sell the property, bid it in, and sue for the recovery of possession. (2) To bring an action to set aside the conveyance, and, if successful, to levy his execution and sell. (To such an action creditors by liens antedating the attacked conveyance would not have been necessary parties.) (3) To bring a creditors' bill to set aside the conveyance and to sell the property under order of Court, distributing the proceeds of sale according to priorities of liens.

The last remedy mentioned is that which he practically adopted, and which he allowed, by the recommendations of the Referee, confirmed by the decree, to stand as the legal interpretation of his action. He is therefore not in a position to contest that interpretation.

The petitioner was not compelled to intervene in the cause, but, it appearing so clearly that the Court had assumed control of the *res* for the purpose of selling it, "freed from all liens," and that notice of *lis pendens* had been filed, the petitioner acted with proper caution and

great propriety in assisting the Court in carrying out its purpose and "not to leave the case open for further litigation."

In the case of *In re Spragins,* 44 S. C., 65; 21 S. E., 543, Chief Justice McIver, delivering the opinion of the Court, says:

"The case of *Wiswall v. Sampson,* 14 How., 52, which seems to be relied upon by the Circuit Judge, is not in point, for the only point decided in that case, so far as the question we are considering is concerned, was that a judgment creditor having a lien upon the land of an insolvent debtor, which is in the possession of a receiver, appointed by the Court of Chancery, under a bill by a creditor against the debtor and a third person, to set aside a conveyance to the latter for fraud, cannot levy his execution upon such land, if he have notice of the fact that the property is in the custody of the law, but his remedy is to apply to the Court of Chancery, which will take care to protect his interest in making a sale or in distributing the proceeds. This is exactly in accordance with the principle laid down in *Gracey v. Davis,* *supra,* to wit: That if the Court takes charge of the fund, it will direct that it be paid out to the creditors according to their legal priorities. So that, if the judgment creditors standing in the second class had undertaken to levy their executions upon the land of Poole, after the Court had taken charge of his assets and placed them in the hands of a receiver, then the case of *Wiswall v. Sampson* would have been precisely in point. But these creditors have not undertaken to do anything of the kind. On the contrary, they are pursuing the same course indicated as the proper course in the case of *Wiswall v. Sampson*—that is, asking the Court to respect and provide for their legal priorities."

By the action of the plaintiff, by the recommendation of the Referee, by the confirmation of the report in the decree, unexcepted to by the plaintiff, by the order of sale and distribution, the Court was in as complete possession of the fund

as if the property had been put into the hands of a receiver; the petitioner has pursued the very course outlined above.

In the case of *French v. Gapen,* 105 U. S., 509; 26 L. Ed., 951, the plaintiff Gapen was the holder of certain certificates of stock in a canal company, which had been issued by authority of the state, contained in a conveyance of the canal property to trustees; he filed a bill in equity against the trustes alone, asking that the property be sold in such manner and on such terms as would best protect the interests of those entitled to share in the proceeds, and so as to bring the highest price and to vest title in the purchaser. While the trustees were in control of the property they leased certain water power made available by their work, to Spears & Case, contractors. These contractors were not made parties to the suit; the trustees being the only defendants. The cause proceeded to judgment, and a decree was signed directing a sale of the property. The portion in which the contractors were interested was sold for a certain price, and the sale confirmed. Thereafter, and "before any final distribution of the proceeds of sale had been made," the contractors filed a petition of intervention setting up a claim of $24,000, which they insisted was a lien upon the property.

It is true that in this case there was no objection to the intervention of the contractors, but the remarks of the Court are pertinent in reference to the propriety of the intervention:

"They were not originally parties to the suit. No sale of the trust property could be made in their absence which would dispose of their rights. All that could pass under such a sale would be that which was conveyed by the State to the trustees, to wit, the canal, and subject to the prior rights of the petitioners. No decree binding on the petitioners could be rendered, defining what their rights actually were. A purchaser would take only what the trustees held, and be left to settle with the petitioners as best he could," —precisely the situation that confronts the purchaser of the property in the case at bar. The Court further says:

"The decree, as entered, is broad enough on its face to authorize a sale of the property free of all incumbrances. * * * It seems to us eminently proper that before the money paid under the sale is put beyond the control of the Court it should be determined what, under the new developments, the rights of the several parties in respect to the property in question really are. From what appears, it is clear that the Court expected to sell, and the purchasers supposed they were buying, the whole property free of all incumbrances. If that be so, the money in the hands of the Court may not, perhaps, improperly be treated as representing what it was supposed would pass by the sale, rather than what actually did pass as the parties stood when the decree was entered. The petitioners, in their intervening petitions, state in terms their willingness to treat the sale as binding on them, if they can be paid from the proceeds what in equity represents the value of their interest in the property sold. As the case now stands, we see no reason why this may not be done."

It would be difficult to put the case of the present intervening judgment creditor more strongly.

In *Heath v. Bishop,* 4 Rich Eq., 58; 55 Am. Dec., 654, it is said:

"Whenever this Court takes hold of an equity for the purpose of giving relief to a creditor, it will do so in behalf of all the creditors, and will marshal the fund among them according to their respective rights. It is a wholesome rule of practice and will be insisted on."

In *Gracey v. Davis,* 3 Strob. Eq., 55; 51 Am. Dec., 663, the Court says:

"The effect of setting aside the deeds is to leave the creditors to enforce their claims and obtain satisfaction according to their legal priorities; or, if this Court takes charge of the fund, to direct them to be paid according to their legal rank."

"It is also a familiar principle that, in order for the process of the Court to convey lands free from incumbrances,

the incumbrancers must be parties to the proceedings; otherwise the purchaser takes subject to the right of the incumbrancers." *Marion County Lumber Co., v. Tilghman Lumber Co.,* 84 S. C., 505; 66 S. E., 124, 877.

The policy of the law favors a complete determination of the rights of all parties concerned in a litigation. This policy should not be thwarted by technical objections; particularly when, as in the case at bar, the rights of parties will be advanced rather than prejudiced.

Section 171 of the Code provides:

"The Court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the Court must cause them to be brought in."

That the petitioner under the circumstances was entitled to intervene in the main cause, is settled by the authorities beyond controversy:

"As we understand the modern practice, any person feeling that he has an interest in the litigation may apply to the Court, and be permitted to intervene and become a party, and have his rights passed upon on the hearing; and the Court will permit him to become such party on a proper showing." *Marsh v. Green,* 79 Ill., 385.

Parties having an interest in the subject matter of the suit in equity, and who are either necessary or proper parties to such suit, if not made so by the plaintiff, may come in by way of application to intervene and be made parties complainant or defendant, to the end that their interests may be adjudicated and protected. *Shannahan v. Stevens,* 139 Ill., 428; 28 N. E., 804.

"In the absence of statutes to the contrary, it has been said that an intervention may be permitted at any stage of the proceedings. * * * If it does not relate to the merits of the question, * * * the intervention need

not delay the main action nor necessarily unsettle any judgment entered therein. Hence in such case there is no reason why an intervention may not be after, as well as before, final judgment." Note, 123 Am. St. Rep., 295.

"Persons who have liens on the property affected by the suit or whose liens may be impaired by the judgment are entitled to intervene." Note, 123 Am. St. Rep., 302, citing *McCarthy v. Kirksley,* 70 Ark., 444; 69 S. W., 53, and numerous other cases.

"Persons who, while not parties to the record, are parties in interest really affected by the judgment, stand in such relation to the judgment that they are entitled to move to set aside or vacate it." 15 Enc. P. & P., 251.

The fact that Turner, the junior judgment creditor, has become the purchaser at the sale, instead of a third person, an outsider, cannot possibly affect the case. If such outsider had purchased, expecting to get what the Court was endeavoring, with the assistance of the plaintiff, to give, a title "freed from all liens." he certainly would not object that the Court should pause until "it should be determined, what, under the new developments, the rights of the several parties in respect to the property in question really are," and that, if the intervening petitioners should establish their liens, that the purchase price be applied to them, rather than to the Turner judgment.

It is difficult to see how the plaintiff is in the slightest degree prejudiced by the intervention of the petitioner. It was not a party to the main cause, and was not therefore concluded by any provision in the decree. Its judgment still stood as a lien upon the property, and if the sale was confirmed in the absence of the petitioner, the plaintiff who bought the property at sale would have to reckon with the petitioner. What difference can it make to the plaintiff, if he should be compelled to allow the judgment out of the purchase price, instead of having to pay the judgment after he had received title for the property? To illustrate:

| | | |
|---|---:|---:|
| The purchase price was | | $60,000.00 |
| The mortgages | $32,339.95 | |
| The Weston claim | 1,540.17 | |
| The Brockman claim | 1,344.74 | 35,224.86 |
| | | $24,775.14 |

As the decree originally stood, the plaintiff would have to pay in $35,224.86, in addition to interest, attorneys' fees, and costs, and would apply $24,775.14, less such interest, attorneys' fees, and costs, to his judgment, and then would hold the property subject to the judgments of $1,604.83 and $5,305.45, besides interest, attorneys' fees, and costs, a total of $6,910.28, which he would have to pay to clear his title. By allowing the intervention of these judgments, amounting to $6,910.28, he would have to increase the payment upon his bid correspondingly, making it $35,224.86 plus $6,910.28, a total of $42,135.14. In other words, he would pay the $6,910.28 to the Master instead of to the Sheriff enforcing the execution upon the two judgments afterwards.

The case of *Ex parte Union Mfg. & P. Co.,* 81 S. C., 265; 62 S. E., 259; 128 Am. St. Rep., 908, fully answers the objection of the plaintiff that the petitioner is not entitled to relief under Section 225, and that the Circuit Court has no power to modify a previous judgment of the Court, and is ample authority to sustain the order of Judge Townsend.

In that case certain land upon which the company desired to acquire the right of flowage, was owned by three tenants in common; two of them executed a grant of the desired easement to the company; the third one, who had not signed the paper, brought suit against the company for damages to her undivided interest. The company answered, claiming the equity to have that portion of the land affected by the flowage, allotted to the tenants in common who had granted the easement. Pending this action the two granting tenants in common instituted partition proceedings against the third,

without notice to the company, and secured a decree in partition allotting the portion affected by the flowage to the tenant in common who had not executed the easement; the evident effect and purpose being to enable her to collect the full damages. After the decree had been signed, which was a final judgment, the company filed a petition that the decree be opened, and that it be permitted to be made a party and allowed to set up its equity. The Circuit Judge refused the petition, but upon appeal his order was reversed, and the petition granted. The Court held that Section 225 (then 195) was full warrant for opening the decree.

In *Bank v. Havird,* 99 S. C., 110; 82 S. E., 1006, the Court allowed the vacation of a judgment, independently of Section 225 of the Code, upon the ground of mistake on the part of the adverse party; and that is just what is sought here, the omission of the plaintiff, in practically a creditor's bill, to make provisions for judgment creditors.

That the Court, as a necessary incident to allowing the petitioner to intervene, had the power to modify the decree of Judge Peurifoy, is perfectly clear.

In *Brenan v. Burke,* 6 Rich. Eq., 200, the Court says:

"It was said by Lord Eldon, 16 Ves. 327, that 'the Court must be always open to questions upon the carriage of the cause.' And this remark was in reference to the subject of protecting the rights of creditors not specially included in the pleadings, and as to the mode of doing so."

See also the opinion of the Court, recently filed, in the case of *Outlaw v. Barnes,* 117 S. E., 363.

The plaintiff, by his action to set aside the deed for fraud, could acquire no priority over the legal liens which existed upon the property.

Speaking of a deed declared by the Court to be fraudulent, it is said in *Du Rant v. Du Rant,* 36 S. C., 49; 14 S. E., 929:

"The very act itself, * * * is made by the law a fraud, and vitiates the deed as to existing creditors. * * * If it was a fraudulent deed, it was void at its execution and ever since that time."

In *Curlee v. Rembert,* 37 S. C., 214; 15 S. E., 954, a deed was attacked for fraud by a junior judgment creditor, not by creditors' bill or bill to marshal assets, but for the benefit of the plaintiff alone, just as the plaintiff in the case at bar, erroneously contends the nature of his suit to be. The deed was adjudged fraudulent, and the plaintiff contended that, as there was sufficient other property to satisfy a senior judgment, the deed should be declared void only so far as the attacking creditor was concerned; but the Court held otherwise, saying:

"Whether the voluntary conveyance of a debtor is void as to existing creditors, must depend, with inconsiderable exception, upon the event—the ultimate insolvency of the debtor. 'A voluntary settlement is void as to existing creditors, if the donor afterwards proves to be insolvent.' * * * The decree in the case (Judge Aldrich's) pronounced the conveyance to Mrs. Rembert void, without limitation or qualification, and called in the creditors of the debtor. There was no appeal, and it is not plain how we can consider the conveyance void as to the plaintiff's judgment, and not as to the judgment confessed to Mrs. Jones. * * * It seems to me that, being void as to one, it was void as to all existing creditors without discrimination."

In *Curlee v. Rembert,* 37 S. C., 214; 15 S. E., 954, it is said:

"A fraudulent conveyance is no conveyance at all, but a mere nullity, the title remaining all the while in the debtor, and subject to all legal liens, as if the fraudulent deed never existed."

In *Gracey v. Davis,* 3 Strob. Eq., 58; 51 Am. Dec., 663, the Court said:

"Where a deed is set aside as interfering with the rights of creditors, it is, as to those creditors, as if it had never existed."

In *Ex parte Spragins,* 44 S. C., 65; 21 S. E., 543, a creditors' bill had been filed for the purpose of setting aside

certain conveyances claimed to have constituted an assignment in violation of law.    Certain creditors who had not been enjoined, or required to participate in the action by coming in and proving their demands, recovered judgments against the debtor after the creditors' bill had been instituted. The Court held that they were entitled to claim the liens of their judgments, saying:

"For it is well settled that, when a deed is set aside, it is, as to the creditors, as if it never had existed (*Gracey v. Davis,* 3 Strob. Eq., 55, *Claflin v. Iseman,* 23 S. C., 416, and *Younger v. Massey,* 41 Id., 50) ; for when these judgments were obtained, they at once became a legal lien upon all of the real property of the judgment debtor, except the homestead, situate in the county where the judgments were entered, or in a county where transcripts thereof were filed, from the time of such filing, notwithstanding the fact that the judgment debtor had made what proved to be an abortive attempt to convey away his real estate previous to the recovery of such judgments."

In the case of *Ex parte Spragins,* 44 S. C., 65 ; 21 S. E., 543, the following from the case of *Codwise v. Gelston,* 10 Johns. (N. Y.), 522, (opinion by Chancellor Kent) is quoted with approval:

"That if a fund for the payment of debts be created under an order or decree in chancery, and the creditors come in to avail themselves of it, the rule of equity then is that they shall be paid in *pari passu,* or upon a footing of equality. But when the law gives a priority, equity will not destroy it, and especially where the legal assets are created by statute, as in case of a judgment lien, they remain so, though the creditors be obliged to go into equity for assistance.    The legal priority will be protected and preserved in chancery."

The exceptions raising other questions that may not be covered by the foregoing observations have been considered and are without merit.

In reference to the petition of the Nicholson Bank & Trust Company it is evident that the order of Judge Townsend allowing it to intervene along with the other petitioner, was made without due notice to the plaintiff. The order, so far as it affects this petitioner, must be reversed without prejudice to a renewal of the petition.

The judgment of the Court is that the order appealed from, except as herein indicated, be affirmed.

MR. CHIEF JUSTICE GARY, and MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE FRASER (dissenting) : The appellant, Turner, owned a judgment against Washington Clark. He brought an action to set aside for fraud a deed made by Mr. Clark to the Washington Realty Company. Certain mortgage creditors were made parties defendants. Two judgment creditors, at their own request, were made parties. The judgment in the case set aside the deed, ordered a sale of the property, and provided for the disbursement of the proceeds of sale, fixing their priorities. Turner made the highest bid, to wit, $65,000. Turner did not comply. The property was resold, and Turner again was the highest bidder, at $60,000. Before the bid was complied with, the parties to the suit and the Special Master were served with a notice of a motion to open the judgment and allow the petitioners, two senior judgment creditors, to come in and to be allowed to participate in the fund. This motion was granted, and from that order this appeal is taken. The first order, which was a final judgment in the case, was not appealed from. The respondents base their right to intervene after final judgment and sale upon Section 225 of the Code, which is as follows (taken from appellant's argument) :

"The Court may * * * in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or

other proceeding, taken against him through his mistake, inadvertance, surprise, or excusable neglect, and may supply an omission in any proceeding; and whenever any proceeding taken by a party fails to conform in any respect to the provisions of this Code of Procedure, the Court may, in like manner, and upon like terms, permit an amendment of such proceeding, so as to make it conformable thereto."

I. It will be observed that this section provides relief for "a party." The petitioners were not parties. It was not "taken against them." The judgment was not taken through their mistake or the mistake of anyone else. Nor was it inadvertent. Turner deliberately took his judgment, and claims that he brought the action in his own name and not for creditors generally, in order that he might secure the fund brought into Court by him. There is no basis for excusable neglect on the part of the petitioner. The allegation is that it was due to the Court's oversight and mistake in not having the said judgment called to its attention. There is no showing that there are no other liens to be provided for. So far as the record shows, there may be any number of them. If there are others, may each one wait until the case is again ready for settlement and then ask that the proceedings shall be held up until his rights may be adjusted? The only injury the petitioners allege is that the final judgment provides that the land shall be sold free from liens and incumbrances. Surely this cannot affect the rights of the petitioners. They were not parties to that proceeding and are not bound by it. The petitioners do not ask to recall the sale. They seek to participate in the proceeds of sale. The sale was made notwithstanding the words of the decree, subject to the liens of their judgments, if they had them. We must assume that the bids were affected by these outstanding judgment liens. The presumption is that every one who dealt with the land knew of the outstanding judgments. The authorities cited author-

ize the coming in of creditors before final judgment, but not after judgment and sale.

II. The first decree was a final judgment, and fixed the priorities of the claims. The order allowing the petitioners to intervene required a rearrangement of priorities. The decree said the purchase money shall be paid out in such and such an order. The order allowing the judgment creditors to intervene nullified that decree in certain particulars, and one Circuit Judge cannot reverse or modify the decree of another, or even one made by himself at a former term. See *Barrett v. James,* 30 S. C., 329; 9 S. E., 263. *Roberts v. Drayton,* (S. C.), 113 S. E., 365. The order for paying out of the proceeds of sale was fixed by the final judgment, and no other Circuit Judge had any jurisdiction to change that order, except in compliance with the statute, and we have seen that this order does not comply with the statute.

Having held that the Circuit Judge had no jurisdiction to make the order appealed from, no other questions arise.

The dower of Mrs. Clark is not decided in this case.